# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v KENNEDY

Docket No. 154445. Argued on application for leave to appeal December 6, 2017. Decided June 29, 2018.

Johnny R. Kennedy was convicted following a jury trial in the Wayne Circuit Court, Craig S. Strong, J., of first-degree premeditated murder. In November 1993, the body of Tanya Harris was discovered in an abandoned building in Detroit. The cause of death was strangulation. Attempts to find Harris's murderer stalled for nearly two decades until 2011, when various swabs taken from Harris's body were tested. The swab from Harris's left fingernail included a mixture of DNA profiles—from Harris and three male donors. Defendant's DNA profile matched the major donor's. Vaginal and rectal swabs taken from Harris also matched defendant's DNA profile. By this time, defendant was already incarcerated for having admitted to strangling another woman in 1996 under similar circumstances. Defendant was charged with Harris's murder, and defense counsel requested the appointment of Brian Zubel as a DNA expert to help understand the evidence, although counsel did not expect Zubel would testify at trial. The court denied defendant's request, and defendant was convicted. Defendant appealed, arguing that the trial court's denial of his motion to appoint an expert violated his constitutional right to present a defense. In an unpublished per curiam opinion issued July 26, 2016, the Court of Appeals, MURRAY, P.J., and RIORDAN, J. (STEPHENS, J., dissenting), affirmed defendant's conviction and found no abuse of discretion or constitutional error in the trial court's denial of defendant's request for an expert. The majority noted that defendant did not provide enough evidence that an expert would have aided the defense, as required by MCL 775.15 and *People v Tanner*, 469 Mich 437 (2003), nor did defendant raise any specific concerns with the evidence. The dissent concluded that the trial court's refusal to appoint an expert violated defendant's due-process rights because defendant could not know the inherent concerns with the DNA evidence without an expert's assistance. Defendant sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 500 Mich 978 (2017).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

The due-process analysis set forth in *Ake v Oklahoma*, 470 US 68 (1985), governs the issue whether a criminal defendant is entitled to the appointment of an expert witness at government expense; because MCL 775.15 does not encompass requests by an indigent criminal

defendant for the appointment of an expert at government expense, *People v Jacobsen*, 448 Mich 639 (1995), and *People v Tanner*, 469 Mich 437 (2003), were overruled to the extent that they held or suggested to the contrary; the reasonable-probability standard set forth in *Moore v Kemp*, 809 F2d 702 (CA 11, 1987), is the appropriate standard for courts to apply in determining whether an indigent criminal defendant has made a sufficient showing to be entitled to expert assistance at government expense under *Ake*'s due-process analysis.

1. In *Ake*, the United States Supreme Court set forth the due-process analysis that a court must follow when an indigent criminal defendant claims he or she has not been provided the basic tools of an adequate defense and therefore has not been given an adequate opportunity to present his or her claims fairly within the adversarial system. *Ake*'s due-process analysis considers: (1) the private interest that will be affected by the action of the state, (2) the governmental interest that will be affected if the safeguard is to be provided, and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Ake* applied this analysis in the context of a request for the assistance of a psychiatric expert in order to present an insanity defense and held that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the state must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. However, *Ake*'s due-process analysis is not limited to psychiatric experts or capital cases. Accordingly, *Ake*'s due-process analysis governs the issue whether a criminal defendant is entitled to the appointment of an expert witness at government expense.

2. MCL 775.15, which provides a means for subpoenaing certain witnesses and for paying their cost of attending trial, does not, by its express terms, provide for the appointment of expert witnesses. Moreover, MCL 775.15 falls short of the constitutional standard set forth in *Ake*, which clearly requires the assistance of an expert in conducting an appropriate examination and in the evaluation, preparation, and presentation of the defense. However, *Jacobsen* and *Tanner* relied on MCL 775.15 to hold that a defendant must show a nexus between the facts of the case and the need for an expert and that without an indication that expert testimony would likely benefit the defense, it was not error to deny without prejudice the motion for appointment of an expert witness. While both *Jacobsen* and *Tanner* applied MCL 775.15, neither opinion specifically addressed whether that statute was applicable to requests by an indigent defendant for the appointment of an expert. Additionally, neither opinion cited *Ake* or applied its due-process framework in determining whether a trial court should grant a request by an indigent criminal defendant for the appointment of an expert witness, nor did either opinion attempt to distinguish *Ake*. Because the Legislature did not intend MCL 775.15 to encompass requests by an indigent criminal defendant for the appointment of an expert at government expense, *Jacobsen* and *Tanner* were overruled to the extent that they held or suggested to the contrary. Therefore, the Court of Appeals erred by analyzing defendant's request for expert assistance under MCL 775.15 instead of *Ake*.

3. In *Moore*, the United States Court of Appeals for the Eleventh Circuit set forth a reasonable-probability standard for determining whether an indigent criminal defendant is entitled to the appointment of an expert at government expense under *Ake*'s due-process analysis. *Moore*'s reasonable-probability standard requires a defendant to show the trial court that there

exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. The standard articulated in *Moore* strikes the right balance between requiring too much or too little of a defendant seeking the appointment of an expert under *Ake* and therefore was adopted as the appropriate standard for Michigan courts to apply. Accordingly, in order to obtain an expert at government expense under *Ake*'s due-process analysis, a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.

Court of Appeals' opinion vacated; case remanded to the Court of Appeals for application of *Ake*'s due-process analysis and *Moore*'s reasonable-probability standard.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED June 29, 2018

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 154445

JOHNNY RAY KENNEDY,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

In this case, defendant claims that the trial court violated his constitutional right to present a defense when it denied his request to appoint a DNA expert. The Court of Appeals disagreed, holding that the trial court did not abuse its discretion when it determined that defendant failed to show that expert testimony would benefit his defense,

as required by MCL 775.15 and *People v Tanner*.[1]  We take this opportunity to clarify that MCL 775.15 does not apply in this context; instead, we hold—as we must—that *Ake v Oklahoma*[2] is the controlling law.  And, to assist trial courts in determining whether a defendant has made a sufficient showing to be entitled to expert assistance under *Ake*, we adopt the reasonable probability standard from *Moore v Kemp*.[3]

Accordingly, in lieu of granting leave to appeal, we vacate the Court of Appeals' decision and remand to that Court for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

In November 1993, the body of Tanya Harris was discovered in an abandoned building in Detroit.  The cause of death was strangulation.  Attempts to find Harris's murderer stalled for nearly two decades until 2011, when various swabs taken from Harris's body were tested.  The swab from Harris's left fingernail included a mixture of DNA profiles—from Harris and three male donors.  Defendant's DNA profile matched the major donor's.  Vaginal and rectal swabs taken from Harris also matched defendant's DNA profile.  By this time, defendant was already incarcerated for having admitted to strangling another woman in 1996 under similar circumstances.

Defendant was charged with Harris's murder.  Defense counsel requested the appointment of Brian Zubel as a DNA expert to help understand the evidence, although

---

[1] *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003).

[2] *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985).

[3] *Moore v Kemp*, 809 F2d 702 (CA 11, 1987).

counsel did not expect Zubel would testify at trial. Specifically, defense counsel noted that the DNA evidence "poses an especially technical and complex range of issues for defense counsel, as the essence of the prosecutions' [sic] case is the presentation of a report from a qualified technician or scientist." In order to provide effective assistance and

> zealously confront the witnesses and evidence called in the prosecution's case in chief, [defense counsel] must be educated . . . in the science and accepted protocols of DNA extraction, preservation, testing, as well as the dangers of contamination and the steps and measures taken to document a particular test, and to maintain the proper calibration of testing equipment.

The court denied defendant's request, stating: "I'm not going to appoint him for that. You can talk to him[;] you can read up on him and go to the conference which all the rest of us have done that[.]"[4]

A jury ultimately convicted defendant of first-degree premeditated murder. Defendant appealed, arguing that the trial court's denial of his motion to appoint an expert violated his constitutional right to present a defense. The Court of Appeals, in a split opinion, affirmed his conviction and found no abuse of discretion or constitutional error in the trial court's denial of defendant's request for an expert.[5] The majority noted

---

[4] A few days before oral argument in this Court, the parties filed a stipulation to expand the record in which defense counsel averred that he sought out, at personal expense, Mr. Zubel and obtained some limited expert assistance regarding the DNA evidence presented in this case. On remand, the parties may argue the effect of this stipulation on defendant's claim that the trial court's denial of his motion for the appointment of an expert violated his constitutional right to present a defense.

[5] *People v Kennedy*, unpublished per curiam opinion of the Court of Appeals, issued July 26, 2016 (Docket No. 323741), p 8.

that defendant did not provide enough evidence that an expert would have aided the defense, nor did defendant raise any specific concerns with the evidence.[6] In dissent, Judge STEPHENS argued that the majority's analysis "begs the question of why defendant would need an expert" because "defendant does not know the inherent concerns with DNA evidence or all the ways in which it may be flawed without an expert to bring those issues to light."[7] Thus, the dissent concluded that the trial court's refusal to appoint an expert violated defendant's due process rights.[8]

This Court ordered oral argument on the application, directing the parties to file supplemental briefing "addressing whether the trial court abused its discretion under MCL 775.15 and/or violated the defendant's constitutional right to present a defense when it denied his request to appoint a DNA expert."[9]

## II. STANDARD OF REVIEW

This Court reviews de novo a question of constitutional law.[10] The interpretation and application of statutes present questions of law that are also reviewed de novo.[11]

---

[6] *Id*. at 7.

[7] *Id*. (STEPHENS, J., dissenting) at 2.

[8] *Id*. at 1.

[9] *People v Kennedy*, 500 Mich 978 (2017).

[10] *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015) ("A due process violation presents a constitutional question that this Court reviews de novo.").

[11] *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012).

4

## III. ANALYSIS

We must first determine what law applies to defendant's claim that the trial court violated his due process rights when it denied his request for the appointment of a DNA expert. Then we consider what showing defendant must make to be entitled to the appointment of the expert.

### A. *AKE v OKLAHOMA:* THE DUE PROCESS RIGHT TO THE BASIC TOOLS OF ADEQUATE DEFENSE

In *Ake v Oklahoma*,[12] the Supreme Court addressed "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question."[13] The Court began its analysis with an overview of the law in this area:

> This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.[14]

After reviewing several of its precedents affording various rights to indigent criminal defendants, the Court observed that

---

[12] *Ake*, 470 US 68.

[13] *Id*. at 70.

[14] *Id*. at 76.

[m]eaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversarial system. To implement this principle, we have focused on identifying the basic tools of an adequate defense or appeal, and we have required that such tools be provided to those defendants who cannot afford to pay for them.[15]

Turning to the issue presented—i.e., "whether, and under what conditions, the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense"[16]—the Court considered the three-factor due process test set forth in *Mathews v Eldridge*[17]: (1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided."[18]

---

[15] *Id.* at 77 (quotation marks and citations omitted).

[16] *Id.*

[17] *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976).

[18] *Ake*, 470 US at 77.

The Court made quick work of the first two factors.  In relation to the first, it observed that "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling."[19]  Thus, the Court concluded that "[t]he interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily in our analysis."[20] Next, considering the interest of the State, the Court noted that it was unpersuaded by Oklahoma's argument that providing Ake with psychiatric assistance would result in a staggering financial burden to the state.[21]  The Court then observed that "it is difficult to identify any [other] interest of the State . . . that weighs against recognition of this right,"[22] and the Court explained that

> [t]he State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases.  Thus, also unlike a private litigant, a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained.[23]

---

[19] *Id*. at 78.

[20] *Id*.

[21] *Id*.

[22] *Id*. at 79.

[23] *Id*.

Thus, the Court concluded that "the governmental interest in denying Ake the assistance of a psychiatrist is not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions."[24]

Finally, the Court "inquire[d] into the probable value of the psychiatric assistance sought, and the risk of error in the proceeding if such assistance is not offered."[25] The Court explained:

> We begin by considering the pivotal role that psychiatry has come to play in criminal proceedings. More than 40 States, as well as the Federal Government, have decided either through legislation or judicial decision that indigent defendants are entitled, under certain circumstances, to the assistance of a psychiatrist's expertise. For example, in subsection (e) of the Criminal Justice Act, 18 USC § 3006A, Congress has provided that indigent defendants shall receive the assistance of all experts "necessary for an adequate defense." Numerous state statutes guarantee reimbursement for expert services under a like standard. And in many States that have not assured access to psychiatrists through the legislative process, state courts have interpreted the State or Federal Constitution to require that psychiatric assistance be provided to indigent defendants when necessary for an adequate defense, or when insanity is at issue.
>
> These statutes and court decisions reflect a reality that we recognize today, namely, that when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense. In this role, psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have

---

[24] *Id*.

[25] *Id*.

8

affected his behavior at the time in question. They know the probative questions to ask of the opposing party's psychiatrists and how to interpret their answers. Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the "elusive and often deceptive" symptoms of insanity, *Solesbee v. Balkcom*, 339 U.S. 9, 12, 70 S.Ct. 457, 458, 94 L.Ed. 604 (1950), and tell the jury why their observations are relevant. Further, where permitted by evidentiary rules, psychiatrists can translate a medical diagnosis into language that will assist the trier of fact, and therefore offer evidence in a form that has meaning for the task at hand. Through this process of investigation, interpretation, and testimony, psychiatrists ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense.

Psychiatry is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of future dangerousness. Perhaps because there often is no single, accurate psychiatric conclusion on legal insanity in a given case, juries remain the primary factfinders on this issue, and they must resolve differences in opinion within the psychiatric profession on the basis of the evidence offered by each party. When jurors make this determination about issues that inevitably are complex and foreign, the testimony of psychiatrists can be crucial and "a virtual necessity if an insanity plea is to have any chance of success." By organizing a defendant's mental history, examination results and behavior, and other information, interpreting it in light of their expertise, and then laying out their investigative and analytic process to the jury, the psychiatrists for each party enable the jury to make its most accurate determination of the truth on the issue before them. It is for this reason that States rely on psychiatrists as examiners, consultants, and witnesses, and that private individuals do as well, when they can afford to do so. In so saying, we neither approve nor disapprove the widespread reliance on psychiatrists but instead recognize the unfairness of a contrary holding in light of the evolving practice.[26]

---

[26] *Id*. at 79-82 (citations omitted).

Therefore, the Court held "that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct *an appropriate examination and assist in evaluation, preparation, and presentation of the defense.*"[27]

One thing about *Ake* is clear: it sets forth the due process analysis that a court must use when an indigent criminal defendant claims he or she has not been provided "the basic tools of an adequate defense" and therefore did not have "an adequate opportunity to present [his or her] claims fairly within the adversarial system."[28]  *Ake* applied this analysis in the context of a request for the assistance of a psychiatric expert in order to present an insanity defense.  But the Court's analysis of the first two factors from *Mathews* certainly applies to other types of experts and fields of expertise.[29]  And many of the Court's observations about psychiatrists and psychiatry also apply equally to other types of experts and fields of expertise.[30]

---

[27] *Id*. at 83 (emphasis added); see also *McWilliams v Dunn*, 582 US___, ___; 137 S Ct 1790, 1799-1800; 198 L Ed 2d 341 (2017).

[28] *Ake*, 470 US at 77 (quotation marks and citation omitted).

[29] See *id*. at 78-79.

[30] There can be no doubt that many types of expert witnesses—including DNA experts—have played a pivotal role in criminal proceedings.  It is undisputed in this case—and indeed seems beyond dispute—that DNA and other types of experts may sometimes "be crucial to the defendant's ability to marshal his defense." *Id*. at 80.  And, finally, we have yet to discern an exact science on this topic—indeed, the very notion is incompatible with our adversarial system of justice, in which "juries remain the primary factfinders . . . and they must resolve differences of opinion [among the experts] on the basis of the evidence

There is a burgeoning consensus that *Ake*'s due process analysis is not limited to psychiatric experts—a point the prosecutor here concedes.[31] And the vast majority of courts have held that although *Ake* involved a capital case, its reasoning is not limited to such cases.[32] We agree with both conclusions.

---

offered by each party." *Id*. at 81; see also *Hinton v Alabama*, 571 US 263, ___; 134 S Ct 1081, 1090; 188 L Ed 2d 1 (2014) ("Prosecution experts, of course, can sometimes make mistakes. Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that '[s]erious deficiencies have been found in the forensic evidence used in criminal trials.' . . . This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses; it is maximized when the defense instead fails to understand the resources available to it by law."), quoting *Melendez-Diaz v Massachusetts*, 557 US 305, 319; 129 S Ct 2527; 174 L Ed 2d 314 (2009).

[31] 3 LaFave, Criminal Procedure (4th ed), § 11.2(e), p 743 ("A substantial majority of the courts addressing the extension of *Ake* have concluded that psychiatric assistance is not so unique as to invariably exclude from the *Ake* rationale all other types of experts."). See, e.g., *Little v Armontrout*, 835 F2d 1240, 1243 (CA 8, 1987) (holding that "[t]here is no principled way to distinguish between psychiatric and nonpsychiatric experts" and that courts must consider, in each case, "not what field of science or expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given"); *State v Mason*, 82 Ohio St 3d 144, 149; 694 NE2d 932 (1998) ("While *Ake* involved the provision of expert psychiatric assistance only, the case now is generally recognized to support the proposition that due process may require that a criminal defendant be provided other types of expert assistance when necessary to present an adequate defense.").

[32] In this regard, we agree with the Tennessee Supreme Court that "[t]he due process principle of fundamental fairness applies to *all* criminal prosecutions, and does not rest upon the severity of the sanction sought or imposed." *State v Barnett*, 909 SW2d 423, 428 (Tenn, 1995) (emphasis added). See also *Moore v State*, 390 Md 343, 363; 889 A2d 325 (2005) ("The majority of courts that have considered this question have concluded that *Ake* applies to non-capital cases."); *Barnett*, 909 SW2d 423 (and the cases cited therein).

## B. MCL 775.15: THE STANDARD APPLIED BY MICHIGAN COURTS

Before today, this Court has not acknowledged that *Ake* is the controlling law in this area. Instead, we have analyzed the issue of whether a criminal defendant was entitled to the appointment of an expert witness at public expense under MCL 775.15. That statute provides as follows:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, *shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial*, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, *the judge in his discretion may*, at a time when the prosecuting officer of the county is present, *make an order that a subpoena be issued from such court for such witness in his favor*, and that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, *and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people.*[33]

In *People v Jacobsen*,[34] after citing approvingly the dissenting Court of Appeals judge's statement that under this statute "a defendant must 'show a nexus between the

---

[33] (Emphasis added.) See also MCL 767.32, which provides that "[t]he clerk of any county in which an indictment shall be found, upon the application of the defendant, and without requiring any fees, shall issue subpoenas as well during the sitting of any court as in vacation, for such witnesses as the defendant may require, whether residing in or out of the county."

[34] *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995) (citation omitted).

facts of the case and the need for an expert,' " we held that "[w]ithout an indication that expert testimony would likely benefit the defense, it was not error to deny without prejudice the motion for appointment of an expert witness."[35]

A few years later, in *People v Tanner*,[36] our Court again addressed the issue of whether an indigent defendant was entitled to the appointment of an expert under MCL 775.15, stating as follows:

> As MCL 775.15 makes clear, a trial court is not compelled to provide funds for the appointment of an expert on demand. In [*Jacobsen*, 448 Mich at 641], this Court held that, to obtain appointment of an expert, an indigent defendant must demonstrate a " 'nexus between the facts of the case and the need for an expert.' " (Citation omitted.) It is not enough for the defendant to show a mere possibility of assistance from the requested expert. "Without an indication that expert testimony would likely benefit the defense," a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness.[37]

*Jacobsen* and *Tanner* are noteworthy for at least two reasons. First, both cases rely on a statute—MCL 775.15—that by its plain text and original meaning does not apply to appointment of expert witnesses; indeed, it was designed for an entirely different purpose. This is made clear by a brief examination of the subject matter the statute *was* intended to cover.

---

[35] *Id*.

[36] *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003).

[37] *Id*. at 442-423.

13

Like its federal counterpart, Michigan's Constitution has always guaranteed that the accused in all criminal proceedings "shall have the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."[38] Not long after statehood, our Legislature enacted the precursor to MCL 775.15, which provided a mechanism for indigent criminal defendants to request the assistance of the court in compelling witnesses to appear at trial at government expense.[39] This statute was last amended in 1877[40] and was recodified in 1927 as MCL 775.15.

MCL 775.15, by its express terms, does not provide for the appointment of expert witnesses. It merely provides a means for subpoenaing certain witnesses and for paying their cost of attending trial. And the mechanism it provides—compelling witnesses to testify—is not the typical way expert witnesses are invited to participate in a criminal proceeding. This is not surprising because the use of expert witnesses was not as thoroughly accepted when the statute was first enacted or when it was later amended.[41]

---

[38] See Const 1835, art 1, § 10; Const 1850, art 6, § 28; Const 1908, art 2, § 19; Const 1963, art 1, § 20. See also US Const, Am VI. As it pertained to state criminal proceedings, this was only a matter of state concern until 1965, when the United States Supreme Court decided that the Fourteenth Amendment makes the Sixth Amendment's right to compulsory process applicable to the states. See *Washington v Texas*, 388 US 14, 17-18; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

[39] See 1849 PA 226.

[40] See 1877 PA 24.

[41] See *McNally v Colwell*, 91 Mich 527, 536-537; 52 NW 70 (1892) ("And since a man's opinion cannot be met and tested, as could his testimony to the existence of a fact, expert evidence, while useful in many cases, is dangerous in all, and should be restricted, for the purpose of accuracy in determining the truth, which is the aim of all judicial investigation, to those cases where its use is well nigh indispensable because of questions

In any event, the statute, which only contemplates "testimony," falls short of the constitutional standard set forth in *Ake*, which clearly requires the assistance of an expert in "conduct[ing] an appropriate examination" and "in evaluation, preparation, and presentation of the defense."[42] While both *Jacobsen* and *Tanner* applied MCL 775.15, neither specifically addressed whether that statute was applicable to requests by an indigent defendant for the appointment of an expert.[43] After *Jacobsen* was decided by

---

of science or skill being involved, in which a special and peculiar knowledge is desired in order to arrive at the truth."); 1 McCormick on Evidence (7th ed), § 13, p 90 ("In the past three decades, the use of expert witnesses has skyrocketed."); The New Wigmore, Expert Evidence (2d ed), § 1.3. pp 10-11 (noting that while experts were increasingly used at the end of the nineteenth century, criticism of their use was prevalent).

[42] *Ake*, 470 US at 83. Indeed, to the extent that MCL 775.15 could be read as applying to expert witnesses at all, it would only cover a small sliver of what *Ake* requires. By its plain terms, MCL 775.15 applies only when the judge, "in his discretion," orders a subpoena for a witness "within the jurisdiction of the court." Assuming that the subpoenaed witness can be an expert, that expert is not "appointed" for defendant pursuant to the statute. Further, the statute contemplates paying the witness "for attending such trial." Thus, the expert is entitled only to the costs for appearing in court. Generally, for nonexpert witnesses, the statutes provide only $12 per day for this cost, MCL 775.13(1), although expert witnesses can be given more, MCL 775.13a. And because the fees are for actually attending court, the fees would likely only be payable after the expert attends. Cf. *Chase v Kalamazoo Circuit Judge*, 154 Mich 271, 273; 117 NW 660 (1908) ("Fees in criminal cases are not required to be paid in advance. They are only paid after the trial upon due proof of attendance."). In any event, an expert under MCL 775.15 would not be appointed to conduct an examination or aid in the evaluation or preparation of the case—the expert would, instead, be compelled to attend the trial and paid only for that attendance. And only experts within the court's jurisdiction are encompassed by the text of the statute. Consequently, if MCL 775.15 extends to expert witnesses—and no one has made this or any other text-based argument that it does—it would cover only a small fraction of *Ake*'s mandate. But any areas of potential overlap would still need to meet the constitutional requirements prescribed by *Ake*.

[43] In *Tanner*, this Court relied exclusively on *Jacobsen*, see *Tanner*, 469 Mich at 442-444; and in *Jacobsen*, this Court, in turn, relied exclusively on the Court of Appeals'

15

this Court, citations by the Court of Appeals of MCL 775.15 in this context have proliferated.[44]

Second, *Jacobsen* and *Tanner* are noteworthy for another reason—neither opinion cited *Ake* or applied its due process framework in determining whether a trial court should grant a request by an indigent criminal defendant for the appointment of an expert witness; nor did either opinion attempt to distinguish *Ake*.[45]

---

dissenting opinion in that case, see *Jacobsen*, 448 Mich at 641, citing *People v Jacobsen*, 205 Mich App 302; 517 NW2d 323 (1994) (TAYLOR, J., dissenting). The dissenting judge assumed, without citing any authority, that MCL 775.15 "authorizes the payment of expert fees in indigent cases." *Jacobsen*, 205 Mich App at 308 (TAYLOR, J., dissenting). Only when we look to the majority opinion in *Jacobsen* do we finally find a case cited for this proposition. *Id*. at 305 (opinion of the Court), citing *People v Miller*, 165 Mich App 32, 47; 418 NW2d 668 (1987). *Miller* appears to be the first appellate decision in Michigan holding that MCL 775.15 governs a trial court's decision whether to appoint an expert witness upon the request of an indigent criminal defendant, although that opinion, too, failed to explain why this is so. The only case it cited, *People v Thornton*, 80 Mich App 746; 265 NW2d 35 (1978), could possibly be read as indicating in dictum that the statute applied to an expert witness, given that one of the witnesses at issue in that case was "an orthopedic surgeon with ballistics expertise." *Id*. at 749, 752. However, whether this dictum even applies to an expert witness is unclear—the opinion does not indicate the nature of the witness's expected testimony, given that the defense refused to disclose the information in open court. *Id*. at 749. In any event, the case *Thornton* cited, *People v Thomas*, 1 Mich App 118; 134 NW2d 352 (1965), did not involve expert witnesses.

[44] Only two Court of Appeals panels applied MCL 775.15 to requests by an indigent defendant for payment of expert witnesses before this Court decided *Jacobsen*, see *In re Klevorn Attorney Fees*, 185 Mich App 672, 678-679; 463 NW2d 175 (1990); *People v Davis*, 199 Mich App 502, 518; 503 NW2d 457 (1993), rev'd on other grounds by *People v Grissom*, 492 Mich 296 (2012). Since *Jacobsen* was decided by this Court, however, citations of MCL 775.15 for this purpose have increased to well over 100 cases.

[45] This point was raised by Judge Raymond Kethledge at oral argument when *Tanner* was before the United States Court of Appeals for the Sixth Circuit on habeas review last year; the Sixth Circuit recently granted a new trial in that case on sufficiency of the

We conclude that the Legislature did not intend MCL 775.15 to encompass requests by an indigent criminal defendant for the appointment of an expert at government expense, and we overrule *Jacobsen* and *Tanner* to the extent that they hold or suggest to the contrary.[46]  Instead, we hold—as we must[47]—that the *Ake* due process analysis governs such requests.

## C. *MOORE v KEMP*: THE REASONABLE PROBABILITY STANDARD

Although *Ake* governs requests by an indigent criminal defendant for the appointment of an expert at government expense, the Supreme Court has not explained how this showing must be made.  This question is critical.  Until an expert is consulted, a defendant might often be unaware of how, *precisely*, the expert would aid the defense.  If, in such cases, the defendant were required to prove in detail with a high degree of certainty that an expert would benefit the defense, the defendant would essentially be tasked with the impossible: to get an expert, the defendant would need to already know what the expert would say.[48]  At the same time, the defendant's bare assertion that an

_____

evidence grounds, so it did not address the defendant's argument that our Court unreasonably applied *Ake*.  *Tanner v Yukins*, 867 F3d 661, 663 (CA 6, 2017).  While the defendant in *Tanner* cited *Ake* in support of her contention that she was entitled to the appointment of an expert, she did not argue that *Ake* required a different standard than that employed by this Court in *Jacobsen*.

[46] We express no opinion as to whether, under the standard adopted in this opinion, *Jacobsen* and *Tanner* correctly held that the defendants in those cases were not entitled to expert assistance.

[47] See US Const, art VI, cl 2.

[48] See *People v Agar*, 314 Mich App 636, 642; 887 NW2d 662 (2016) ("We are troubled by the logic that a defendant who admits technical ignorance and who has no resources

17

expert would be beneficial cannot, without more, entitle him or her to an expert; otherwise, every defendant would receive funds for experts upon request.[49]

A majority of states confronting this problem have adopted a reasonable probability standard.[50] In *Moore v Kemp*, the United States Court of Appeals for the Eleventh Circuit discussed this standard as follows:

> [A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather . . . a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case

---

from which to acquire technical expertise is asked to present evidence of what evidence an expert would offer in order to receive public funds to hire the expert."), vacated in part and reversed in part 500 Mich 891 (2016); *People v Carnicom*, 272 Mich App 614, 620; 727 NW2d 399 (2006) (COOPER, J., concurring) ("If the court provides to indigent defendants the right to a court appointed and funded expert witness, there can be no requirement that the defendant first show the expert will support his claim. Otherwise, the right affords defendants no protection at all.").

[49] Cf. *Caldwell v Mississippi*, 472 US 320, 323 n 1; 105 S Ct 2633; 86 L Ed 2d 231 (1985) (citing *Ake* and noting that "[g]iven that petitioner offered little more than undeveloped assertions that the requested [expert] assistance would be beneficial, we find no deprivation of due process in the trial judge's decision" to deny the defendant's request for appointment of experts).

[50] See *State v Davis*, 318 SW3d 618, 634-365 (Mo, 2010) (characterizing the reasonable probability test as "the prevailing test" used by a "host of jurisdictions"); *Moore*, 390 Md at 367 ("The test that seems to have been adopted by the majority of courts considering the issue is the one enunciated by the United States Court of Appeals for the Eleventh Circuit in *Moore v. Kemp*.").

and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case.[51]

We believe that the standard articulated in *Moore* strikes the right balance between requiring too much or too little of a defendant seeking the appointment of an expert under *Ake*. Therefore, we adopt *Moore*'s reasonable probability standard as the appropriate standard for courts to apply in determining whether an indigent criminal defendant is entitled to the appointment of an expert at government expense under *Ake*'s due process analysis. In particular, we hold that "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial."[52]

---

[51] *Moore*, 809 F2d at 712.

[52] *Id*.

19

## IV. CONCLUSION

For the reasons stated above, we hold that the Court of Appeals erred by analyzing defendant's request for expert assistance under MCL 775.15 instead of *Ake*. Thus, we vacate the Court of Appeals' decision, and we remand to the Court of Appeals for application of the *Ake* due process analysis and, in particular, consideration of whether defendant made a sufficient showing that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.[53]

> David F. Viviano
> Stephen J. Markman
> Brian K. Zahra
> Bridget M. McCormack
> Richard H. Bernstein
> Kurtis T. Wilder
> Elizabeth T. Clement

---

[53] We leave to the Court of Appeals on remand all remaining issues, which shall be resolved consistently with this opinion.