*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONALD WILLIE WILLIAMS,

Defendant-Appellant.

FOR PUBLICATION
May 23, 2019
9:00 a.m.

No. 341703
Macomb Circuit Court
LC No. 1993-001791-FC

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

MARKEY, J.

Defendant, a juvenile lifer, appeals by delayed leave granted[1] the trial court's order granting in part and denying in part his motion for approval of public funds to hire "mitigation" experts for his resentencing hearing. Defendant had requested expert witness funding in the amount of $42,650. The trial court awarded him $2,500, but it did not articulate how it arrived at that figure. We vacate the order and remand for further proceedings.

The prosecutor sought to resentence defendant to life imprisonment without parole (LWOP) for his 1993 jury trial conviction of first-degree felony murder, MCL 750.316(1)(b), which he committed as an aider and abettor in 1993 at age 16. See *People v Williams*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 1997 (Docket No. 176570), p 1. Defendant was sentenced as an adult in 1994 to mandatory LWOP for the first-degree murder conviction. *Id*.

In *People v Hayes*, 323 Mich App 470, 473-474; 917 NW2d 748 (2018), this Court explained the recent evolution in the law regarding the treatment of juveniles who committed murder and face or received sentences of LWOP:

---

[1] *People v Williams*, unpublished order of the Court of Appeals, entered June 4, 2018 (Docket No. 341703).

In *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held that mandatory punishment of life in prison absent the possibility of parole for a defendant who was under the age of 18 at the time of the sentencing offense violates the Eighth Amendment's prohibition against cruel and unusual punishments. The *Miller* Court did not indicate whether its decision was to be retroactively applied to closed cases involving juvenile offenders. In light of *Miller*, the Michigan Legislature enacted MCL 769.25, which provides a procedural framework for sentencing juvenile offenders who have committed offenses punishable by life imprisonment without the possibility of parole; this provision applied to pending and future cases. Anticipating the possibility of *Miller*'s retroactive application for closed cases, the Legislature also enacted MCL 769.25a, which would be triggered if our Supreme Court or the United States Supreme Court were to hold that *Miller* applied retroactively. And subsequently, in *Montgomery v Louisiana*, 577 US __; 136 S Ct 718; 193 L Ed 2d 599 (2016), the United States Supreme Court held that the rule announced in *Miller*, which was a new substantive constitutional rule, was retroactive on state collateral review. Accordingly, MCL 769.25a took effect.

Under MCL 769.25a(4)(b), prosecutors are directed to "file motions for resentencing in all cases in which the prosecuting attorney will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole." MCL 769.25a(4)(b) further states that a hearing on the motion must be conducted as provided in MCL 769.25. And MCL 769.25 provides in pertinent part:

> (6) If the prosecuting attorney files a motion . . ., the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in Miller . . ., and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

> (7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

Here, on July 6, 2016, the prosecutor filed a motion pursuant to MCL 769.25a(4)(b), requesting that defendant be again sentenced to LWOP. Defendant opposed the prosecutor's motion and sought dismissal of the motion on various grounds that are not relevant to this appeal. Defendant also filed a motion for the approval of public funds to hire experts. Defendant argued that he needed experts to analyze the *Miller* factors, including experts with specialized knowledge in adolescent development.[2] Defendant refers to these experts at times as

---

[2] The *Miller* factors include: (1) the defendant's "chronological age and its hallmark features," including any "immaturity, impetuosity, and failure to appreciate risks and consequences[;]" (2)

"mitigation specialists." The trial court granted in part and denied in part defendant's motion. The court stated that defendant was entitled to financial assistance to pay for expert witnesses but found that his request for $42,650 was "highly excess[ive]." The trial court ruled that $2,500 would be made available to defendant to retain expert witnesses in connection with his resentencing. The court did not explain how it arrived at that sum.[3]

On appeal, defendant argues that the trial court erred in limiting expert funding to $2,500. The prosecution agrees, acknowledging that the trial court's decision was "arbitrary" and that the court's action in "foreclosing any potential increase to the fee was an abuse of discretion." There is no dispute between the parties that defendant is constitutionally entitled to some level of funding for mitigation experts. Indeed, in *People v Carp*, 496 Mich 440, 473; 852 NW2d 801 (2014), our Supreme Court specifically stated that when a prosecutor seeks a LWOP sentence for a juvenile offender, the defendant "must be afforded the opportunity *and the financial resources* to present evidence of mitigating factors relevant to the offender and the offense." (Emphasis added.)[4] See also *Betterman v Montana*, __ US __; 136 S Ct 1609, 1617; 194 L Ed 2d 723 (2016) ("After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair.").

Recently, in *People v Kennedy*, 502 Mich 206, 210; 917 NW2d 355 (2018), our Supreme Court determined that, contrary to prior case law, MCL 775.15[5] does not apply in the context of

---

the defendant's "family and home environment," including any brutality or dysfunctionality as well as the possibility that the defendant is unable to leave that environment; (3) the circumstances of the crime, including the extent of the defendant's participation and the effect of any familial or peer pressures; (4) the possibility that the defendant may have been convicted of a lesser offense but for any youthful "incompetencies" such as an inability to deal with the police, the prosecutor, or attorneys; and (5) the possibility of rehabilitation. *Miller*, 567 US at 477-478.

[3] At oral argument and in a letter submitted to this Court, defendant indicated that a resentencing hearing was conducted in December 2018, that the trial court denied the prosecutor's request for LWOP and sentenced defendant to 30 to 60 years' imprisonment, and that the Michigan Parole Board subsequently granted parole to defendant. He is scheduled for release May 29, 2019. Furthermore, defendant indicated he hired four mitigation experts who testified at the hearing at a total cost of $75,000. These fees were advanced by *pro bono* counsel. Defendant continues to seek reimbursement.

[4] *Carp* was vacated on other grounds and remanded sub nom *Carp v Michigan*, __ US __; 136 S Ct 1355; 194 L Ed 2d 339 (2016), and sub nom *Davis v Michigan*, __ US __; 136 S Ct 1356; 194 L Ed 2d 339 (2016).

[5] MCL 775.15 provides:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a

a criminal defendant's request for the appointment or funding of an expert. Instead, the *Kennedy* Court held that the United States Supreme Court's decision in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), is the controlling law on the matter *Id.* And to assist a trial court in determining whether a defendant has made a sufficient showing to be entitled to assistance of an expert under *Ake*, the Court in *Kennedy* adopted the "reasonable probability" standard from *Moore v Kemp*, 809 F2d 702 (CA 11, 1987). *Kennedy*, 502 Mich at 210.

We direct the trial court on remand to take into consideration the principles set forth in *Kennedy* in determining the amount of funds to reimburse defendant for his mitigation experts so as to satisfy constitutional requirements. Special attention should be given to the *Kennedy* Court's adoption of the "reasonable probability" standard articulated by the United States Court of Appeals for the Eleventh Circuit in *Moore*, 809 F2d at 712. See *Kennedy*, 502 Mich at 226-228. In particular, the *Moore* "reasonable probability" standard provides:

> "[A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather . . . a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense

trial, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people.

counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case." [*Kennedy*, 502 Mich at 227, quoting *Moore*, 809 F2d at 712 (alteration and omission in original).]

We recognize that this passage is not focused on sentencing and pertains more to whether any funding for an expert, irrespective of the amount, should be authorized. But a court may employ and be guided by those same principles in determining how much funding is necessary to protect a defendant's rights.

In the instant case, defendant asked for the appointment of experts at public expense to assist in analyzing the *Miller* factors for purposes of the resentencing hearing. In its opinion and order granting in part and denying in part defendant's request for expert costs, the trial court acknowledged that defendant was entitled to financial assistance to pay for expert witnesses in connection with his resentencing. The trial court's determination on this point was consistent with our Supreme Court's recognition that financial assistance to present evidence regarding mitigating factors must be provided to a defendant in this situation. See *Carp*, 496 Mich at 473.

Although the trial court recognized that defendant was entitled to funding for expert witnesses for his resentencing, the court stated that defendant's request for $42,650 was "highly excess[ive]" and that the court would instead provide $2,500 to defendant to retain expert witnesses. The trial court provided no substantive analysis to explain why it believed that defendant's requested sum was excessive, nor did the court explain how it arrived at the sum of $2,500. Therefore, on the present record and as conceded by the prosecution, we conclude the trial court's limitation of expert funding to $2,500 lacks support and must be vacated. On remand the trial court is to apply the principles in *Kennedy* and any other relevant authorities in setting the amount of funding for the mitigation experts defendant employed.

We vacate the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ James Robert Redford
/s/ Kirsten Frank Kelly