*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MNB, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

MNB,

      Respondent-Appellant.

UNPUBLISHED
February 28, 2025
10:09 AM

No.  366034
Isabella Circuit Court
Family Division
LC No.  22-000052-DL

Before:  MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

M. J. KELLY, J. (*dissenting*).

I respectfully dissent.  Because I do not believe that the trial court erred by denying respondent's motion to fund an expert witness, I would affirm the jury's verdict finding respondent guilty of misdemeanor assault and battery, MCL 750.81(1).

As noted by the majority, this case arose from a school-yard brawl between two teenage girls, respondent and LC, who had previously been friends.  Another student who was standing some distance away was able to record a short portion of the scrap with a cellular telephone camera.  The images in the video were blurry and did not depict the start of the altercation.  Not surprisingly, the testimony conflicted as to which girl pushed the other first.  There was also contradictory testimony regarding some of the events and statements that had been made prior to the girls' ultimate showdown.  But all of the witnesses agreed that respondent punched LC multiple times while LC was on the ground.

Significantly, respondent pleaded self-defense and testimony was introduced from the respondent as well as two other students that LC had started the altercation by pushing respondent in the back and that she had previously taunted respondent with vile racial epithets and cruel jibes about her hair.  Respondent's lawyer provided excellent representation for his client and delivered a concise argument setting out the case for self-defense in his closing.  As relevant to the issue raised in this appeal, he argued:

The other piece to think about is, and I hate to say it, but you know the words that were used by LC that—that at least three people have testified to being used, Officer Browne, [ND and KH—] were very offense (sic) to my client who is of African American heritage, and they were coming out of [LC's] mouth. You saw [LC]. Now, if you believe that those words came out of her mouth those were very, very offensive, not just like oh, you're stupid. No, those were extremely offensive words. And even at th—at the words, my client didn't throw a punch, my client didn't respond. At most, [respondent] says that she—she tried to talk to [LC], she tried to talk to [LC], and [LC] pushed her.

If you take the two witnesses together, [LC] pushed her twice and my client didn't respond. But after the second time, yes she did respond, but that's self-defense after being pushed twice, that is self-defense. You will get a jury instruction as to what self-defense is. I want you to consider that. My client was not the aggressor, you should not find her guilty of—of Assault and Battery because she was not the aggressor in this, you should find her innocent because that's what she is. She was the innocent victim of [LC] who has now, you know, comes to court to ask you to believe that she was the victim.

The trial court instructed the jury on self-defense as set forth in the Standard Jury Instructions.

Self-defense was a primary issue at trial and was vigorously litigated. Thus, the relevant inquiries were: (1) who was the first aggressor, (2) whether respondent honestly and reasonably believed she had to use force to protect herself from [LC], and (3) whether MB used the necessary amount of force for the necessary amount of time to protect herself. See MCL 780.972(2)[1] and *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) ("In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor.").

Respondent took full advantage of her right to invoke self-defense and LC's prior use of a racial slur and derogatory comments about her hair. The majority, however, contends that respondent was deprived her right to a "meaningful defense" and due process because an unidentified witness *potentially* "would have helped illustrate for the jury that [respondent's] response to being called a racial slur was not excessive under the circumstances." There are both procedural and substantive problems with the majority's position.

---

[1] MCL 780.972(2) provides:

An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

First, I do not believe that the trial court erred when it denied respondent's request for expert funding because respondent did not "demonstrate something more than a mere possibility of assistance from a requested expert." *People v Kennedy*, 502 Mich 206, 227; 917 NW2d 355 (2018). Respondent argues—and the majority agrees—that an expert witness would have assisted her in making out her claim of self-defense because an expert could have explained the social context of respondent and LC's fight and how the evidence of LC's racially derogatory comments could have made respondent feel more fearful, justifying her use of force. But respondent's argument fails to acknowledge that the trial court's justification for denying respondent's request was that respondent had failed to adequately describe the expert she wished to hire or provide sufficient information regarding the usefulness of an expert to respondent's case. Respondent admitted that she had not yet located an expert, and she did not request a specific expert. Moreover, respondent could not describe in detail the specific scientific information that a proposed expert would testify to in order to bolster respondent's self-defense argument. The material attached to respondent's motion discussed the disparities in the juvenile justice and child welfare systems rather than the theory underlying respondent's self-defense argument. While socially significant information, these studies failed to provide the court with an explanation as to why a "particular expert [was] necessary" or the "usefulness of the requested expert to the defense's case." See *id*. Without more detailed information regarding the specific type of expert that respondent was requesting, or the field of study that a proposed expert would be testifying about, the trial court could not evaluate whether "there exist[ed] a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id*. For these reasons, I believe that respondent did not meet her burden to demonstrate that it was appropriate for the court to appoint an expert in the present case. As such, the trial court did not prevent respondent the opportunity to present this specific aspect of her self-defense claim when it denied her motion for expert funding in the present case.

But even if respondent had properly complied with her procedural burden in demonstrating the need for an expert, there is nothing admissible about communal or systemic racial biases that would have assisted the jury in answering any of the relevant questions the jury was charged with answering, those again being (1) who was the first aggressor, (2) whether respondent honestly and reasonably believed she had to use force to protect herself from LC, and (3) whether respondent used the necessary amount of force for the necessary amount of time to protect herself.

On appeal, respondent cites additional authority purporting to show that young women of color face bullying about their hair. But that authority also has no bearing on any of the relevant questions decided by the jury. Although that authority may offer insight into respondent's subjective state of mind, it does not help the jury decide whether she honestly believed she faced an *imminent* threat of harm from LC that required the use of force. Put simply, respondent's self-defense theory was conceptually simple and did not require explanation by way of expert testimony. See *People v Propp*, 340 Mich App 652, 661; 987 NW2d 888 (2022) (stating that there was no error in denying the defendant's motion to appoint an expert witness where the defense's theory of the case "was ably conveyed to the jury" and "no additional expert testimony was necessary to explain such a simple concept . . .").

Finally, the proposed expert testimony would be inadmissible for an additional substantive ground, namely, that the proposed expert testimony, as acknowledged by the majority, would seek to excuse or justify an assault and battery as a result of the words allegedly spoken by LC. This

simply is not allowed under Michigan law.  It has long been the rule in Michigan that words—no matter how foul and insulting—do not justify an assault and battery.  *Goucher v Jamieson*, 124 Mich 21, 22; 82 NW 663 (1900).  In *Goucher*, the defendant argued that his assault and battery on the plaintiff was "provoked" because the plaintiff had used "derogatory" language when referring to his son.  *Id*. at 21.  But our Supreme Court rejected his position.  *Id*. at 22.  Likewise, in this case respondent asserts that she should be excused from her assault and battery conviction because LC used a racial slur and made derogatory comments about her hair.  Under *Goucher*, such comments do not warrant her attacking LC in the first instance.  Nor do they justify her using excessive force in response to being shoved by LC.

Because the proposed expert testimony would be inadmissible, respondent can neither demonstrate that it would be "of assistance" to her nor that its preclusion would result in a "fundamentally unfair trial."  For these reasons, I would affirm.

/s/ Michael J. Kelly