# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 10, 2019

155849

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,
v

SHAWN LOVETO CAMERON, JR.,
      Defendant-Appellant.
_____/

SC: 155849
COA: 330876
Washtenaw CC: 13-001315-FH

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

On November 19, 2018, the Court heard oral argument on the application for leave to appeal the April 4, 2017 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MCCORMACK, C.J. (*concurring.)*

I concur in the Court's order denying leave to appeal because I agree that MCL 769.1k(1)(b)(*iii*) distinctly states a tax and that the appellant has not established that the statute lacks an intelligible principle or violates the nondelegation doctrine. Even so, I write separately because it's unclear to me that the statute does not prevent the judicial branch from "accomplishing its constitutionally assigned functions." *Nixon v Administrator of Gen Servs*, 433 US 425, 443 (1977).

My concerns about the constitutionality of MCL 769.1k(1)(b)(*iii*) are underscored by the troubling letters submitted by amicus curiae Michigan District Judges Association (MDJA). They describe the pressures they face as district judges to ensure their courts are well-funded. For example, one city threatened to evict a district court from its courthouse because it was unable to generate enough revenue. Another judge noted that the same city suggested that judges eliminate personnel if they could not generate enough revenue to cover the operational costs. A third judge recounted that his local funding unit referred to the district court as "the cash cow of our local government."

The MDJA contends that MCL 769.1k(b)(*iii*) creates a conflict of interest by shifting the burden of court funding onto the courts themselves. In the MDJA's telling, MCL 769.1k(1)(b)(*iii*) incentivizes courts to convict as many defendants as possible. The "constant pressure to balance the court's budgets could have a subconscious impact on

even the most righteous judge." MDJA Brief, p 16. They believe that the statute thus violates the Fourteenth Amendment, because the "possible temptation," *Tumey v Ohio*, 273 US 510, 532 (1927), of raising more revenue by increasing the number of convictions infringes defendants' due-process rights.

The MDJA could be right. The United States Supreme Court has consistently overturned convictions where the presiding judge had any form of pecuniary interest in a defendant's conviction. E.g., *Tumey*, 273 US 510 (in which a "Liquor Court" judge was also the mayor, and his judge/mayor paycheck came directly from court costs for convicted defendants); *Ward v Village of Monroeville*, 409 US 57 (1972) (overturning traffic convictions because a substantial portion of village income came from fines, fees, and costs imposed against defendants by the village mayor in judicial capacity; mayor's executive responsibilities for village presented a "possible temptation" when adjudicating traffic offenses). No matter how neutral and detached a judge may be, the burden of taxing criminal defendants to finance the operations of his court, coupled with the intense pressures from local funding units (and perhaps even from the electorate), could create at least the appearance of impropriety. Assigning judges to play tax collector erodes confidence in the judiciary and may seriously jeopardize a defendant's right to a neutral and detached magistrate.

These issues have not been squarely presented in this case, and I am not comfortable answering them today and without a fully developed record. But I expect we will see them brought directly to us before long.

I recognize that denying leave to appeal in this case will allow our current system of trial court funding in Michigan to limp forward—at least until MCL 769.1k(1)(b)(*iii*) sunsets next year. Yet our coordinate branches have recognized the long-simmering problems. The interim report of the Trial Court Funding Commission shows a potential way forward that promises to address these (and other) concerns. I urge the Legislature to take seriously the recommendations of the Commission, before the pressure placed on local courts causes the system to boil over.

BERNSTEIN, J., joins the statement of MCCORMACK, C.J.

CAVANAGH, J., did not participate in the disposition of this case because the Court considered it before she assumed office.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 10, 2019



Clerk

s0709