*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER ROBERT STANAWAY,

Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 343757
Gogebic Circuit Court
LC No. 2017-000143-FH

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for operating a motor vehicle while intoxicated (OWI), third offense, MCL 257.625(1); MCL 257.625(9)(c). We affirm.

## I. FACTS

On April 30, 2017, at approximately 12:30 a.m., a police officer stopped defendant's vehicle because one of the headlights was out. Defendant explained during trial that, at the time of the stop, he and a coworker were traveling back to Michigan from Wisconsin. The officer testified that, when he approached the vehicle, he smelled alcohol and observed two half-empty beer bottles in the vehicle's center console. Defendant testified that he and his coworker had just stopped at a restaurant, where defendant had two beers and a Long Island iced tea. Before getting back on the road, defendant and his passenger purchased a six-pack of beer, and were drinking from two open beers in the center console during the drive.

The officer testified that, during the course of the stop, he took defendant's license and registration, and returned to his patrol vehicle. When the officer ran defendant's license, he found that it was expired. He returned to defendant's vehicle and noticed that the beer bottles were no longer in the center console; they were now in the backseat, empty. Defendant testified during trial that when the officer went back to his patrol car during the stop, defendant and the passenger drank the beers in the center console because they did not want to receive an open-container violation. The officer administered three field sobriety tests, which defendant failed. Defendant refused the administration of a preliminary breath test (PBT), so the officer arrested

-1-

him for OWI. During trial, defendant testified that he refused to take the PBT because he had just consumed the beer and thought this would result in an extremely high reading.

At the police station, defendant refused a DataMaster test. Consequently, the officer obtained a search warrant for defendant's blood and transported him to the hospital. Defendant's blood was drawn at the hospital approximately two and a half hours after the initial stop, and tests revealed a blood alcohol content (BAC) of 0.093%.

## II. ANALYSIS

### A. EXPERT WITNESS

Defendant first argues that the trial court erred by denying his request for the appointment of an expert witness at public expense. We disagree.

"We review de novo, as an issue of constitutional law implicating a defendant's due-process rights, the trial court's grant or denial of a defendant's request for state funds to retain an expert." *People v Propp*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343255), slip op at 3.

Before trial, defendant requested the trial court to appoint an expert at government expense, arguing that he required an expert because there was evidence that he had access to alcohol (referring to the half-empty beer bottles in the center console) between the time he was stopped and the time his blood was drawn. Defendant argued that an expert could testify that, had defendant consumed the alcohol in the center console, it would have raised his BAC from below 0.08% to the measured 0.093%. At the hearing on his motion, defendant expanded on his argument, explaining that "an expert will be able to testify about the effects of the beer; you know, the effects of drinking beer right before and right after the traffic stop and how that would affect [defendant's BAC] and get it right over the legal limit."

In denying defendant's motion, the trial court explained in relevant part,

[A]ssuming that the defendant had in fact consumed that alcohol [in the center console], the defense can still raise the issue in front of the jury on that point, and the science on this issue is pretty well established. That is, there is not a great dispute in the scientific community on consumption of alcohol and how it elevates or reduces [BAC] in an individual or evaporates or dissipates over time, so that the defense will have ample opportunity to cross-examine the forensic laboratory individual who came with the blood test result concerning the potential of the test being affected by [defendant's] consumption after the stop, if in fact defense is able to show that there was the potential for that consumption.

On appeal, defendant points out that the trial court analyzed his motion for appointment of an expert under MCL 775.15, which has since been deemed improper. See *People v Kennedy*, 502 Mich 206, 225; 917 NW2d 355 (2018). Now, "the appropriate standard for courts to apply in determining whether an indigent criminal defendant is entitled to the appointment of an expert at government expense" is the "reasonable probability standard" announced in *Moore v Kemp*,

809 F2d 702, 712 (CA 11, 1987). *Kennedy*, 502 Mich at 228. Under that standard, the defendant " 'must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.' " *Id*., quoting *Moore*, 809 F2d at 712.

Defendant contends that, by applying the wrong legal standard, the trial court "applied a framework inconsistent with Due Process and denied [defendant's] right to a fair trial." Defendant argues that under the appropriate "reasonable probability standard," the trial court should have granted his motion for funds for an expert witness. While we agree that the trial court applied the wrong legal framework, we nonetheless conclude that, applying *Kennedy*, defendant failed to establish a reasonable probability that denial of expert assistance resulted in a fundamentally unfair trial.[1]

As the trial court noted, "there is not a great dispute in the scientific community on consumption of alcohol and how it elevates or reduces in an individual or evaporates or dissipates over time, so that the defense will have ample opportunity to cross-examine the forensic laboratory individual who came with the blood test result concerning the potential of the test being affected by [defendant's] consumption after the stop[.]" In other words, because there is no "great" dispute about how the consumption of alcohol raises a person's BAC and how a person's BAC dissipates over time, defendant could have cross-examined the prosecution's expert to present this evidence to the jury. In so doing, defendant would have been able to use the prosecution's expert to present the defense that he now claims he needed his own expert for: that his consumption of the half-bottle of beer could have raised his BAC above the legal limit.

For whatever reason, however, defense counsel at trial did not delve into this line of questioning. He instead focused on the margin of error for the 0.093% BAC test result, and then had the expert admit that she could not testify with certainty what defendant's BAC was at the time he was pulled over two and one-half hours before his tested blood was actually drawn. Defense counsel never inquired about what effect, if any, the alcohol consumed after the stop could have had on defendant's BAC when his blood was drawn compared to his BAC when he was initially stopped.[2] On appeal, defendant does not claim that he could not have gotten this information from the prosecution's expert. And even if he did, the prosecution's expert testified during direct examination that she had knowledge and experience about the general and potential

---

[1] This Court recently considered events at trial when deciding whether a defendant established a reasonable probability that the denial of expert assistance resulted in a fundamentally unfair trial, see *Propp*, ___ Mich App at ___; slip op at 7-8, so we will do the same. Although in doing so, we note that the *Moore* Court directed reviewing courts to evaluate the "trial judge's action at the time he took it." *Moore*, 809 F2d at 710. See also *Conklin v Schofield*, 366 F3d 1191, 1208 (CA 11, 2004) ("In determining the reasonableness of the trial court's refusal to provide independent expert assistance, we consider only the facts available to the trial judge when he made a ruling on the particular motion.").

[2] Defendant does not raise an ineffective assistance of counsel claim or otherwise argue that his counsel was ill prepared to cross-examine the prosecution's expert.

effects of alcohol on an individual. Yet defendant broadly asserts that he needed an expert of his own to present evidence about the effect his consumption of the half-bottle of beer had on his BAC. We simply cannot agree that defendant needed his own expert at government expense to present this information when, as noted by the trial court and acknowledged by the prosecution's expert, he could have presented the same evidence when cross-examining the prosecution's expert. We therefore conclude that defendant did not establish a reasonable probability that denial of expert assistance resulted in a fundamentally unfair trial.[3]

## B. COURT COSTS

Defendant also argues that the $300 in court costs imposed under MCL 769.1k(1)(b)(*iii*) constituted an unconstitutional tax. We disagree.

In *People v Cameron*, 319 Mich App 215, 218; 900 NW2d 658 (2017), we concluded that costs imposed under MCL 769.1k(1)(b)(*iii*) constituted a tax, but held that the tax was not unconstitutional. We are bound by *Cameron*'s holding. See MCR 7.215(J)(1).[4]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

---

[3] The trial court also denied defendant expert assistance at government expense because it found that defendant was not indigent. In light of our above analysis, we need not address defendant's appellate argument with respect to this ruling.

[4] While not relevant to our holding, we note that, since this appeal was filed, our Supreme Court has denied leave to appeal in *Cameron*. *People v Cameron*, 929 NW2d 785, 785 (2019).