*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONALD WILLIE WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
February 25, 2021

No. 351174
Macomb Circuit Court
LC No. 1993-001791-FC

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order granting in part and denying in part defendant's renewed motion for the approval of public funds for mitigation experts for his resentencing hearing. We affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 1993, defendant was convicted by a jury of first-degree felony murder, MCL 750.316(1)(b), under a theory of aiding and abetting. Defendant was 16 years old at the time of the murder. Defendant was sentenced as an adult to life in prison without parole. In *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held that it violates the Eighth Amendment's prohibition against cruel and unusual punishment to sentence a defendant, who was under the age of 18 years old when the sentencing offense occurred, to mandatory punishment of life in prison without the possibility of parole. After the United States Supreme Court held that the *Miller* rule applied retroactively on state collateral review, *Montgomery v Louisiana*, 577 US ___; 136 S Ct 718; 193 L Ed 2d 599 (2016), the prosecution filed a motion to resentence defendant to life without the possibility of parole. *People v Williams*, 328 Mich App 408, 412; 938 NW2d 42 (2019). Defendant sought the dismissal of the

---

[1] *People v Williams*, unpublished order of the Court of Appeals, entered February 13, 2020 (Docket No. 351174).

-1-

prosecution's motion and also "moved for the approval of public funds to hire experts" arguing "that he needed experts to analyze the *Miller* factors, including experts with specialized knowledge in adolescent development." *Id*. On October 5, 2017, the trial court issued an opinion and order acknowledging that defendant was entitled to financial assistance to pay for experts, but the trial court concluded that defendant's request for $42,650 in expert fees was highly excessive. *Id*. at 413. The trial court granted defendant a total of $2,500 to retain experts for his resentencing hearing. *Id*. at 413.

Following the trial court's order, this Court granted defendant's delayed application for leave to appeal. *Id*. at 410 n 1. Defendant argued that "the trial court erred by limiting expert funding to $2,500," and in response the prosecution agreed, acknowledging that the trial court's decision was arbitrary and that the trial court abused its discretion. *Id*. at 413. While defendant's appeal was pending in this Court, the trial court held a two-day resentencing hearing during which the following mitigation experts testified: Rachel Merriwether, a mitigation expert with Sentencing Advocacy Group of Evanston (SAGE), an organization that provides mitigation investigation in juvenile and capital cases; Dr. John Fabian, a forensic psychologist and neuropsychologist; and Robert B. Stapleton, a retired hearings administrator for the Michigan Department of Corrections (MDOC), who evaluated defendant's prison adjustment and disciplinary history while confined in the MDOC.[2] Although the prosecutor cross-examined some of defendant's witnesses, the sole evidence admitted in support of the contention that defendant should be resentenced to life without the possibility of parole was a letter written by the victim's family. The probation department in an updated presentencing investigation report did not recommend that defendant be resentenced to life without the possibility of parole. The trial court resentenced defendant to 30 to 60 years' imprisonment, and with the calculation of good time credits, defendant was paroled from prison.

On May 23, 2019, this Court issued an opinion vacating the trial court's October 5, 2017 order granting defendant $2,500 in expert fees and remanding the case. *Id*. at 416-417. Therein, we explained that the relevant standard regarding whether defendant was entitled to expert fees was provided in *People v Kennedy*, 502 Mich 206; 917 NW2d 355 (2018), which stated that "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Williams*, 328 Mich App at 415, quoting *Kennedy*, 502 Mich at 227. Because the trial court "did not explain how it arrived at [$2,500]," this Court vacated the trial court's order and remanded for the trial court to "apply the *Kennedy* principles and any other relevant authorities in setting the amount of funding for the mitigation experts defendant employed." *Williams*, 328 Mich App at 414-417.

On remand, defendant[3] filed a renewed motion for the approval of funds to compensate experts requesting an increased amount of $75,738.46 and arguing that all of the expert fees

---

[2] Additionally, the transcript of testimony offered by brain science expert Dr. Daniel Keating for a different defendant was submitted to the trial court, and Dr. Keating did not charge a fee for the use of this testimony.

[3] Counsel for defendant agreed to represent defendant pro bono. To satisfy the *Miller* factors, counsel agreed to advance the funds necessary to retain experts.

requested were reasonable under *Kennedy*. Defendant submitted documentary evidence, including affidavits and invoices, to support the request. Defendant and the prosecutor appeared for an evidentiary hearing to address the fees requested. However, the trial court advised that it would take the matter under advisement and contact the parties if additional information or testimony was necessary.

The trial court issued a written opinion and order concluding that defendant was entitled to $1,125 in reimbursement funds solely for the testimony of expert Stapleton presented at the resentencing hearing. The trial court declined to award any funds for the testimony offered by Dr. Fabian of Austin, Texas. Although defendant submitted that his rate for forensic work was $300 an hour and was comparable to or lower than others in the industry, the trial court faulted defendant for failing to present documentary evidence to support that assertion. The trial court also cited to defendant's failure to demonstrate why a trial would have been fundamentally unfair in the absence of Dr. Fabian's testimony particularly where the trial court did not rely on the testimony or report. The trial court also declined to award any fees for the SAGE mitigation report and testimony. Although the trial court acknowledged the itemized fees presented, it denied any funding premised on the failure to identify the individuals and their backgrounds who performed the underlying research. Following the trial court's order, defendant filed an application for leave to appeal in this Court arguing that the trial court abused its discretion when it only granted defendant $1,125 to reimburse experts. This Court granted defendant's application for leave to appeal. *People v Williams*, unpublished order of the Court of Appeals, entered February 13, 2020 (Docket No. 351174).

## II. EXPERT FEES

Defendant contends that the trial court abused its discretion when it refused to grant, in full, defendant's request for the funds used to obtain expert assistance in connection with his resentencing hearing. Because the trial court's opinion and order did not comport with the reasonable probability standard as set forth in *Kennedy*, we agree that the trial court erred in only granting $1,125 in expert fees and vacate the determination in part.

This Court "review[s] de novo, as an issue of constitutional law implicating a defendant's due-process rights, the trial court's grant or denial of a defendant's request for state funds to retain an expert." *People v Propp*, 330 Mich App 151, 159; 946 NW2d 786 (2019).

The *Williams* Court explained the recent history of the law regarding juveniles sentenced to life in prison without parole:

> In *Miller v Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), the United States Supreme Court held that mandatory punishment of life in prison absent the possibility of parole for a defendant who was under the age of 18 at the time of the sentencing offense violates the Eighth Amendment's prohibition against cruel and unusual punishments. The *Miller* Court did not indicate whether its decision was to be retroactively applied to closed cases involving juvenile offenders. In light of *Miller*, the Michigan Legislature enacted MCL 769.25, which provides a procedural framework for sentencing juvenile offenders who have committed offenses punishable by life imprisonment without the possibility of

-3-

parole; this provision applied to pending and future cases. Anticipating the possibility of *Miller's* retroactive application for closed cases, the Legislature also enacted MCL 769.25a, which would be triggered if our Supreme Court or the United States Supreme Court were to hold that *Miller* applied retroactively. And subsequently, in *Montgomery v Louisiana*, 577 US ___, 136 S Ct 718, 193 L Ed 2d 599 (2016), the United States Supreme Court held that the rule announced in *Miller*, which was a new substantive constitutional rule, was retroactive on state collateral review. Accordingly, MCL 769.25a took effect. [*Williams*, 328 Mich App at 411, quoting *People v Hayes*, 323 Mich App 470, 473-474; 917 NW2d 748 (2018).]

"Under MCL 769.25a(4)(b), prosecutors are directed to file motions for resentencing in all cases in which the prosecuting attorney will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole." *Williams*, 328 Mich App at 411-412 (quotation marks omitted). The trial court shall conduct a hearing on the motion. *Id*. at 412. Further, under *Miller*, prior to resentencing, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 US at 489. Our Supreme Court summarized the *Miller* mitigating factors to be considered by a judge or jury as follows:

"[defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation[.]" [*People v Skinner*, 502 Mich 89, 104-105; 917 NW2d 292 (2018), quoting *Miller*, 567 US at 477-478.]

Moreover, "when a prosecutor seeks a [life without parole] sentence for a juvenile offender, the defendant 'must be afforded the opportunity and the financial resources to present evidence of mitigating factors relevant to the offender and the offense[.]' " *Williams*, 328 Mich App at 413, quoting *People v Carp*, 496 Mich 440, 473; 852 NW2d 801 (2014).[4] Further, in *Kennedy*, the Michigan Supreme Court held that the United States Supreme Court's decision in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087, 84 L Ed 2d 53 (1985), is the controlling law on matters involving a criminal defendant's request for the appointment or funding of an expert. *Kennedy*, 502 Mich at 210. The *Kennedy* Court adopted the "reasonable probability" standard set forth in *Moore* to help a trial court determine whether a defendant established entitlement to expert assistance under *Ake*.

---

[4] *Carp* was vacated on other grounds and remanded sub nom *Carp v Michigan*, 577 US ——, 136 S Ct 1355, 194 L Ed 2d 339 (2016), and sub nom *Davis v Michigan*, 577 US ——, 136 S Ct 1356, 194 L Ed 2d 339 (2016).

*Kennedy*, 502 Mich at 225. The *Kennedy* Court discussed the "reasonable probability" standard as set forth in *Moore*:

> "[A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather . . . a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case." [*Kennedy*, 502 Mich at 227, quoting *Moore*, 809 F2d at 712 (alternation in original).]

In *Williams*, we applied the above "reasonable probability" standard adopted by *Kennedy* to the present matter stating, "[w]e recognize that this passage is not focused on sentencing and pertains more to whether any funding for an expert, irrespective of the amount, should be authorized. But a court may employ and be guided by those same principles in determining how much funding is necessary to protect a defendant's rights during the sentencing phase." *Williams*, 328 Mich App at 416.[5]

Defendant initially requested $42,650 in funds for expert fees. The trial court considered this amount to be "highly excess[ive]," and awarded defendant $2,500. *Williams*, 328 Mich App at 413. We concluded that the trial court abused its discretion in limiting defendant's request for expert costs where the trial court neither explained why it believed that defendant's requested sum was excessive, nor how the trial court arrived at the sum of $2,500. *Id*. at 416-417. On remand,

---

[5] To the extent the trial court expressed concern regarding county funding and requests by other defendants to retain experts, we note that budget constraints are not relevant to this analysis.

the trial court was directed "to take into consideration the principles set forth in *Kennedy* in determining the amount of funds to reimburse defendant for his mitigation experts so as to satisfy constitutional requirements," paying special attention to "the *Kennedy* Court's adoption of the 'reasonable probability' standard articulated by the United States Court of Appeals for the Eleventh Circuit in *Moore*, 809 F.2d at 712." *Williams*, 328 Mich App at 415.

When the case was returned to the trial court, the resentencing evidentiary hearing was completed, and defendant was resentenced to 30 to 60 years' imprisonment. On remand, defendant requested that the increased amount of $75,738.46 in expert fees be reimbursed for fees incurred for Dr. Fabian, the SAGE mitigation specialists, and Stapleton, all of whom testified at defendant's resentencing hearing. Under the "reasonable probability" standard, the trial court was required to consider whether defendant established that SAGE, Dr. Fabian, and Stapleton would be likely to assist the defense and whether it would be fundamentally unfair to deprive defendant of this expert assistance.

The trial court failed to properly apply the "reasonable probability" standard on remand. In regard to the services provided by SAGE, the trial court did not determine whether there was a reasonably probability that SAGE's services would be necessary to help ensure a fair resentencing hearing. Rather, having hindsight on the matter, the trial court concluded that defendant was not entitled to any portion of the $56,374 requested because defendant did not provide a breakdown of which mitigation specialists provided which services and defendant failed to provide the qualifications or backgrounds of the SAGE mitigation specialists. This complete elimination of all fees reflecting the services provided by SAGE also contradicted the trial court's statement that it would request additional information from the parties, if necessary. Moreover, the trial court did not consider that, irrespective of the underlying preparation of materials, Merriwether testified at the hearing regarding defendant's life history and reached a conclusion that defendant was prepared to be released back into society.

The principles set forth in *Kennedy* require a defendant to provide some level of information regarding requested experts, such as a specific description of the expert desired and reasons why the expert is necessary. *Kennedy*, 502 Mich at 227. Contrary to the trial court's conclusion, defendant provided the trial court with a description of the services offered by SAGE and the reasons underlying the necessary services. As part of defendant's initial motion for expert fees, filed prior to the resentencing hearing, defendant submitted the affidavit of Elizabeth Wilson, the founder of SAGE, in which Wilson described the purpose of SAGE. Wilson contended that the mitigating factors set forth in *Miller* could only be explored and enumerated with a thorough investigation including "exhaustive in-depth records collection and review, multiple in-person witness and client interviews, and individual reentry planning" with the aim to collect information related to "the background and mental and emotional development" of the client. In Wilson's nine-page affidavit and her accompanying curriculum vitae, Wilson not only detailed SAGE's purpose and information gathering process, but also her background, qualifications, and the estimated costs associated with the services. Wilson and Merriwether were two of the four individuals that prepared the mitigation report provided by SAGE.

Under the circumstances, we conclude that the trial court erred by failing to consider whether there was a reasonable probability that the services provided by SAGE would assist the defense and failure to obtain such services would deprive defendant of a fair resentencing. When

considering the requirements necessary to ensure a fair resentencing, it was reasonably probable that services provided by SAGE would assist the defense. Indeed, the prosecutor categorically sought to incarcerate defendant for the rest of his life despite the holding of *Miller*. Although a defendant is not entitled to unlimited funds, "defendant is constitutionally entitled to some level of funding for mitigation experts." *Williams*, 328 Mich App at 413. Thus, the trial court improperly denied all of the requested funds for the services provided by SAGE solely on the basis that defendant neither provided a breakdown of expenses incurred by specific mitigation specialists nor the background and qualifications of the mitigation experts. The trial court did not contact the parties regarding the need for additional documentation, despite its representation at the hearing, and failed to consider the testimony presented by Merriwether at the evidentiary hearing.

The trial court also concluded that defendant was not entitled to any of the $17,863 in fees requested for Dr. Fabian because defendant provided no evidence that Dr. Fabian's rates were comparable to others in the field, defendant failed to address how not retaining Dr. Fabian would have resulted in a fundamentally unfair resentencing, and the trial court already resentenced defendant without reliance on Dr. Fabian's testimony or report.[6] The trial court did not determine whether there was a reasonable probability that it would be necessary to obtain the services of Dr. Fabian, a forensic psychologist and neuropsychologist, or a similar expert, to assist the defense in establishing mitigating factors. Further, despite the trial court's conclusion, made in hindsight, that the trial court did not rely on Dr. Fabian's testimony, the "reasonable probability" standard does not require a determination as to whether, after the fact, the trial court found an expert's testimony helpful.

Dr. Fabian provided testimony regarding defendant's neurocognitive disabilities and his mental health concerns related to the trauma he suffered as a child because of his home environment and the way in which his neurocognitive disabilities and mental health affected his susceptibility to peer influence and his ability to make decisions. This testimony is relevant to multiple *Miller* factors including defendant's immaturity and failure to appreciate the risks associated with his actions, the family and home environment, and how familial or peer pressure affected defendant's actions. Because of the relevance of Dr. Fabian's testimony, it was reasonably probable that such expert testimony and services could assist the defense, despite the trial court's conclusion that it did not rely on Dr. Fabian's testimony. Indeed, the trial court's conscious choice to not rely on the information fails to address its import to defendant and application to the propriety of an appropriate resentence. Thus, the trial court abused its discretion in failing to grant defendant any fees incurred for Dr. Fabian's services without first properly applying the "reasonable probability" standard to determine whether the testimony would assist

---

[6] We again note that the trial court did not request additional information from the defense to support the fees. More importantly, when defendant submitted its initial request for fees, there was no discussion on the record regarding the evidence the prosecutor would present, the evidence in the existing criminal record that addressed the *Miller* factors, and the defense need to retain experts to address the remaining factors. We are cognizant of the trial court's budget concerns, but these concerns must be weighed against defendant's indigency and his attempt to demonstrate his rehabilitation should be not limited by his lack of resources.

the defense in establishing mitigating factors, and thus, ensuring defendant received a fair resentencing hearing.

Moreover, the trial court concluded that Stapleton's testimony was necessary and his fees reasonable. However, because Stapleton's travel was done pro bono, the trial court subtracted the amount incurred for travel, and awarded defendant the remaining fees for Stapleton's services in the amount of $1,125. On appeal, defendant contends that Stapleton's total fees were $1,500, but defendant asserted in the lower court that Stapleton's travel was done pro bono. Defendant presented no evidence that the $1,500 requested in fees for Stapleton's services did not account for the pro bono travel time. Thus, the trial court did not abuse its discretion in concluding that $1,125 was reasonable for Stapleton's services.

In conclusion, it was required that defendant be given the opportunity and the financial resources to present evidence of mitigating factors relevant to the offender and the offense. *Williams*, 328 Mich App at 413. While the trial court found Stapleton's testimony to be helpful, Stapleton's testimony concerned one mitigating factor—defendant's potential for rehabilitation. In light of the prosecutor's request that defendant spend the rest of his life in prison, apparently premised on office policy, it is expected that defendant will attempt to demonstrate that his commission of this awful crime as a juvenile was a product of his abusive home environment, his exposure to criminality and drug use in the home, his lack of role models, his educational deficiencies and the lack of resources, and his resort to inappropriate peers in light of a deficient foundation in the home. In light of the prosecutor's request that defendant be confined for the rest of one's life, defendant retained experts to demonstrate that the horrific act committed as a juvenile did not define the rest of his life and that he was not without redemption. Consequently, defendant sought out SAGE and Dr. Fabian to provide a comprehensive analysis of the remaining *Miller* factors to ensure that he received a fair resentencing. Thus, the trial court abused its discretion when it failed to properly apply the "reasonable probability" standard to SAGE and Dr. Fabian and concluded that this expert testimony had no value. We again remand for the trial court to properly apply the "reasonable probability" standard and determine the amount of reasonable funds to be reimbursed to defendant for his mitigation experts.

We affirm the trial court's order regarding the Stapleton fee, vacate the trial court's order denying the fees for mitigation experts SAGE and Dr. Fabian, and remand the case for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan