*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Parole of JENNIFER RUTH SCIBILIA.

MONROE COUNTY PROSECUTOR,

      Appellee,

v

JENNIFER RUTH SCIBILIA,

      Appellant,

and

PAROLE BOARD,

      Intervenor-Appellee.

UNPUBLISHED
May 26, 2022

No. 357977
Monroe Circuit Court
LC No. 2020-143364-AP

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Appellant, Jennifer Scibilia, (appellant) appeals by leave granted the circuit court order reversing the decision of the Michigan Parole Board granting appellant parole. *In re Parole of Jennifer Ruth Scibilia*, unpublished order of the Court of Appeals, entered September 13, 2021 (Docket No. 357977). Appellant argues the Parole Board properly acted within its discretion when deciding to grant her parole and that the circuit court impermissibly substituted its judgment for that of the Parole Board when it reversed the Board's decision. For the reasons set forth in this opinion, we reverse the circuit court's order and remand for the circuit court to reinstate the Parole Board's decision to grant appellant parole.

## I. BACKGROUND

Appellant was convicted of second-degree murder, MCL 750.317, of her 3½-year-old son by suffocation, in 1997, and sentenced to 25 to 50 years' imprisonment. While imprisoned,

-1-

appellant accumulated 14 misconducts. Appellant applied for a commutation of her sentence in July 2010, which was denied. The Board granted parole to appellant, in July 2018. Appellant was prohibited from having contact with other felons, or minors under 17 years old.

Appellant violated her parole between August 2019, and October 2019 by having contact with a minor and associating with felons. Appellant was babysitting an infant, and interacted with inmates using an alias. Appellant did not dispute the violations and admitted she made a mistake. Appellant was permitted to remain on parole with electronic monitoring. It was later reported, however, that appellant assaulted two children in her care, slapping both, and causing a nose bleed for one of the children. Appellant contended the children kicked and hit her, and she believed they had Oppositional Defiant Disorder. Because of her parole violations, appellant was returned to prison.

Appellant was psychologically evaluated in January 2020. In her evaluation, appellant noted she lost a child before her son, who died of pneumonia at age two. While incarcerated, appellant pursued various educational avenues, and, on parole, got engaged and purchased a home. Regarding her violations, appellant stated she was trying to help a friend in need of a babysitter, and had since learned "that helping others can't come before my needs and my freedom."

Appellant's parole guidelines score was +15, indicating a high probability of parole. The Board ordered appellant's parole in August 2020. Appellee, Monroe County Prosecuting Attorney appealed the Board's decision, alleging the Board abused its discretion by granting appellant parole without considering her "extensive misconduct history while incarcerated, her lack of remorse for her crime, or, most notably, her blatant display of how dangerous she is to society if released while out on parole."

At the motion hearing, the prosecutor argued there were substantial and compelling reasons not to grant appellant parole, regardless of her guidelines score. Additionally, the prosecutor argued that the Parole Board lacked reasonable assurances appellant would not become a menace to society or public safety. The Parole Board argued it was within its discretion when it determined appellant would not become a menace to society or public safety, which was supported by her high parole guidelines score of +15. The Board noted appellant had cancer, a job and housing ready, and community support. The Board stated appellant was "on thin ice with this parole" despite her high guideline score because of her previous violation, and asserted it would monitor appellant closely upon her release. The Board explained appellant was punished for her violations when her parole was revoked, and, after returning to prison, did not have any misconducts and participated in more programs.

Appellant testified the parole violations appeared to be two separate events, but were actually on the same day. Appellant acknowledged she should not have agreed to watch the children, given her parole conditions. Appellant also stated, while she was accused of assaulting the children, Children's Protective Services (CPS) later found she had not.

An October 2020 case summary report indicated the behaviors reflected in appellant's misconducts had diminished, and appellant interacted well with staff and other inmates. The report further indicated appellant expressed remorse for her actions and maintained community support.

The circuit court reversed the Parole Board's decision granting appellant parole, reasoning appellant violated what could be considered the most important condition of her parole, no contact with minors, twice, and shifted the blame to the children instead of taking responsibility. The circuit court noted appellant understood what she was forbidden from doing, but chose to disregard her parole conditions. The circuit court further noted the Parole Board recognized the risk appellant posed to society because of her "multiple contacts with children as well as her propensity to blame the children for her actions[.]" The circuit court concluded the Parole Board abused its discretion when it found reasonable assurances appellant would not be a menace to society or public safety. This appeal followed.

## II. ANALYSIS

This Court reviews de novo a circuit court's decision to reverse the Parole Board's grant of parole because the circuit court's decision involves the proper interpretation and application of statutes, court rules, and administrative guidelines. See *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018) ("The interpretation and application of statutes present questions of law that are . . . reviewed de novo."). The circuit court may reverse the Parole Board's decision to grant a prisoner parole *only if the prosecutor demonstrates the Board's decision constituted a clear abuse of discretion* or violated a constitution, statute, rule, or regulation. *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011); see also MCL 791.234(11) and MCR 7.104(D)(5). (emphasis added). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Elias*, 294 Mich App at 538. The Parole Board does not abuse its discretion when it makes a reasonable and principled decision regarding which side to believe when confronted with conflicting information. *Id*. at 546. A circuit court must presume the Parole Board read and considered all materials in the record when making its decision, and the circuit court may not substitute its judgment for that of the Board. *Id*. at 538-539, 547.

The Parole Board has discretionary authority to decide whether to release an eligible prisoner on parole. *Id*. at 521; see also MCL 791.234(11). The Parole Board's discretion is not unlimited, however, because it must consider "[s]tatutorily mandated parole guidelines" and "comprehensive regulatory parole guidelines" to determine the appropriateness of parole. *Elias*, 294 Mich App at 512, 514-515. Under these parole guidelines, the Parole Board must determine "whether parole is in the best interests of society and public safety considering the prisoner's past and current criminal behavior, institutional adjustment, readiness for release, personal history and growth, and physical and mental health." *In re Parole of Haeger*, 294 Mich App 549, 553; 813 NW2d 313 (2011) (quotation marks, citation, and alterations omitted). The Parole Board must also compute and consider a "final parole guidelines score" that determines the prisoner's probability of parole. *Elias*, 294 Mich App at 518; see also MCL 791.233e(1). This score is computed on the basis of:

> the prisoner's time served as well as the aggravating and mitigating circumstances of the sentencing offense, the prisoner's prior criminal record, the number of major misconducts committed by the prisoner within the preceding one- and five-year periods, the prisoner's score on risk screening scales, the prisoner's age, the prisoner's performance in recommended institutional programs, and [t]he prisoner's mental health status. [*Haeger*, 294 Mich App at 554 (quotation marks and citation omitted; alteration in original).]

Following our review of the record we conclude that the circuit court improperly reversed the Parole Board's decision to grant appellant parole. The circuit court's reasoning for reversing the Board's grant of parole was based on appellant's actions while she was on parole. The circuit court acknowledged the Board had all the relevant information available to it, and noted: "When there is material in the record, it is presumed that the Parole Board read and considered that material. [] *Elias*, 294 Mich App at 547." The circuit court focused on appellant's understanding she was not to contact minors, and subsequent disregard for that condition, but this, alone, does not create a substantial and compelling reason to depart from the parole guidelines. The circuit court also noted the Parole Board "recognized [appellant] posed an ongoing risk to children" when it revoked her parole, and reasoned this, along with appellant's "multiple contacts with children as well as her propensity to blame the children for her actions" was sufficient to determine the Board abused its discretion in granting appellant parole. However, the Parole Board's recognition of the risk appellant posed to children was reflected in its revocation of her parole. Appellant was punished for her parole violation by being returned to prison. Appellant remained in prison as a result of her parole violations for an additional six months. During her additional stay in prison, the record reveals that appellant appeared to be a model inmate. She had no misconducts during her return, and, in fact, had not had one since 2009.

As for the violations themselves, appellant testified the CPS investigation determined she did not assault the children, and appellant has since recognized she cannot sacrifice her parole for the needs of others. Indeed, the Parole Board asserted appellant received additional counseling since being returned to prison and was on "thin ice with this parole despite the fact that she does have a high guideline score." The Parole Board noted it would be keeping a close eye on appellant after her release, opining that these events served as a wake-up call for appellant, and further noted appellant had cancer, a job and housing lined up after release, and community support. The circuit court did not identify any other facts which would indicate the Parole Board's decision was an abuse of discretion, and did not identify any substantial and compelling reasons to go against the parole guidelines. Consequently, there is nothing in the record from which we could conclude that the Parole Board's decision fell outside the range of reasonable and principled outcomes. Rather, review of the record leads us to conclude that the circuit court impermissibly substituted its judgment for that of the Parole Board when it reversed the Board's decision. *Elias*, 294 Mich App at 538-539. Accordingly, we reverse and remand this matter to the circuit court to reinstate appellant's parole.

Reversed and remanded for the circuit court to reinstate the Parole Board's decision to grant appellant parole. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood