# Court of Appeals, State of Michigan

# ORDER

In re Parole of Kenneth Donald Siders

Docket No. 360415

LC No. 2019-020563-AP

Christopher M. Murray
Presiding Judge

Colleen A. O'Brien

James Robert Redford
Judges

The motion for reconsideration is GRANTED, in part, to correct two misstatements of fact. Because the Parole Board was not a party to this appeal, the Parole Board has been removed from the case caption. Additionally, the opinion has been corrected to reflect that it was the Newaygo County Prosecutor, and not the Attorney General, who argued for reversal of the parole decision. In all other respects, the motion for reconsideration is DENIED. This Court's opinion issued September 15, 2022, is hereby VACATED. A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

October 27, 2022
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Parole of KENNETH DONALD SIDERS.

NEWAYGO COUNTY PROSECUTOR,

      Appellee,

UNPUBLISHED
October 27, 2022

v

KENNETH DONALD SIDERS,

      Appellant.

No. 360415
Newaygo Circuit Court
LC No. 2019-020563-AP

ON RECONSIDERATION

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order reversing the Parole Board's grant of parole to defendant. We affirm.

## I. FACTUAL BACKGROUND

In 1984, defendant was charged with three counts of first-degree criminal sexual conduct (CSC-I) arising from defendant's sexual penetration of his three biological children who were all under 13 years old at the time: KS, his 5-year-old son; AS, his 3½-year-old daughter; and HS, his 2-year-old daughter.[2] Defendant's presentence investigation report (PSIR) indicates that a

---

[1] *People v Siders*, unpublished order of the Court of Appeals, entered March 21, 2022 (Docket No. 360415).

[2] AS died in 1987. HS died in 2012. KS was adopted and took his adoptive parents' last name, but for purposes of this opinion we refer to him as KS.

-1-

licensed social worker gave deposition testimony regarding her June 5, 1984 interviews with the children in relation to a Newaygo County Probate Court parental rights termination case. She testified that KS disclosed to her in significant detail that defendant both physically and sexually abused KS, including that defendant penetrated KS's mouth and anus with his penis. KS told her that defendant "peed in my mouth" and affirmed that when defendant put his penis in KS's mouth something came out of defendant's penis. KS also witnessed defendant sexually abuse HS, his infant sister. AS disclosed to the social worker that defendant penetrated her mouth and anus with his penis. HS, who was not very verbal at the time of her interview, disclosed to the social worker that defendant "hurt her bootie," a term she used for her female genitalia. The PSIR further indicates that, as a result of the sexual abuse, AS was treated for herpes. The record also contains facts ascertained by the Newaygo County Probate Court indicating that a medical doctor who specialized in the field of infectious diseases determined that defendant's daughters both had genital herpes and one had gonorrhea acquired through sexual intercourse.

Defendant pleaded *nolo contendere* to committing CSC-I against AS and the other charges were dismissed. The court sentenced defendant to life imprisonment with the possibility of parole. A defendant sentenced to life in prison in 1984 became eligible for parole after serving 10 years and then every 5 years after that. Defendant's parole applications in 1994, 1999, 2004, 2009, and 2013 were all denied.

In 2019, defendant again sought parole. As part of the parole evaluation process, defendant underwent a Qualified Mental Health Professional Evaluation (QMHP), a Static-99R evaluation, and a Stable-2007 evaluation. Defendant scored "low" on the Static-99R and "moderate" on the Stable-2007 which placed defendant "in the Low priority category for supervision and intervention in comparison to other sexual offenders assessed using these measures." An evaluation using the parole guidelines scoresheet gave defendant a score of +3, which equated to a high probability of parole.

The Parole Board held a public hearing in June 2019 at which defendant testified. Defendant admitted that, when KS was around five or six years old, he penetrated KS's anus with his penis but said that it only happened on one occasion. Defendant could not explain why he sexually abused KS. He stated "it was just a sexual pleasure thing that goes back a long ways." He said that the only thing he could "search in my mind as a sexual thing" was that he had been sexually abused at age 10 or 11 by other patients while a patient in the Kalamazoo State Hospital. Defendant admitted that he experienced sexual gratification when he assaulted KS but denied ejaculating. Defendant stated that his sexual assault of KS "wasn't really pleasureful" but affirmed that he lacked insight or explanation why he did it. He denied any other instances of sexually abusing KS. Later, however, defendant also admitted that he put his penis into KS's mouth. Defendant admitted that KS cried during the first sexual assault which defendant stated made him feel shame and guilt. He then admitted that he sexually assaulted KS again. Defendant testified that he did not understand why he did it again.

Defendant admitted touching AS's vagina when she was four years old but denied penetrating her. He stated that the first time he tried to put his penis into AS's mouth she bit down so he stopped. Later in his testimony, however, he admitted that on other occasions he put his penis into AS's mouth. He stated that he thought he did it for personal pleasure but denied that he received pleasure, denied ejaculating, and denied digitally penetrating AS. When asked about AS

being treated for herpes when she was four years old, defendant denied ever having any type of herpes. Defendant also admitted that he touched and rubbed two-year-old HS's vagina with his hands and tried to put his penis into her mouth one time.

Defendant could not explain why he did what he did. He stated that he wanted sexual pleasure but did not experience it and felt bad afterwards. He admitted that despite such feelings he continued to sexually abuse all three children. When challenged regarding why defendant repeatedly sexually abused his children, if he experienced no pleasure, defendant testified that he continued to sexually abuse them to see if he would enjoy it. He did not know why he thought he could get sexual pleasure from children.

Defendant testified that he had not been able to complete his GED and affirmed that he obtained a waiver. When asked what programs he had engaged in during incarceration, defendant reported that he could not get into sex offender programs so he voluntarily participated in the Hope and Recovery program.[3] He admitted that for years he denied committing his crimes, but that program helped him admit that he sexually assaulted his three children. Defendant reported, however, that he had completed no other programs.

Defendant testified that he had no people on the outside and would need a community placement. He stated that he planned to apply for a minimum wage job washing dishes. He said that he would complete some sort of therapy program for sexual problems if given the opportunity. He had $1,000 saved in his prison account, had an interest in horticulture, and if released, he planned to buy land and build greenhouses.

KS's adoptive mother, a clinical social worker, testified that since KS's adoption at eight years old, KS had both psychological and physical problems from the abuse he suffered. He had problems with his intestines because of the sexual abuse. He experienced anxiety, depression, and suicidal thoughts that led to psychiatric placements. She stated that the neglect and abuse KS suffered made him disabled and, despite his intelligence, his psychological issues interfered with his ability to maintain employment and engage in normal life activities. She stated that HS suffered from herpes in her mouth, throat, stomach, and intestines from the sexual abuse she suffered. She testified that defendant should not be paroled.

KS testified that defendant should not be paroled. He explained that the abuse affected his life and caused him fear and insecurity. He pointed out a scar on his forehead from being hit with a bat by defendant. KS stated that he suffered guilt for not being able to protect his sisters from defendant. He testified that he witnessed defendant commit sexual abuse. KS said that he hated himself and feared that he would become like defendant.

The Department of the Attorney General objected to and opposed parole because defendant committed assaultive and heinous crimes on the children, had no sex offender treatment, expressed no insight into why he sexually assaulted the children, and nothing indicated that the public would be safe from defendant. Further, defendant lacked support on the outside and had no parole plan.

---

[3] The record indicates that defendant attended that program around 1999.

Following the hearing, the Parole Board decided that reasonable assurances existed that defendant would not become a menace to society or to the public safety, and it granted defendant parole. On September 13, 2019, the prosecution applied for leave to the circuit court to appeal the Parole Board's decision. The prosecution also moved for a temporary ex parte stay of defendant's release. The court granted a temporary stay on September 19, 2019. The court granted leave to appeal on December 15, 2020. On appeal, the prosecution argued that the Parole Board abused its discretion by granting defendant parole and cited the numerous misconduct tickets that defendant received while incarcerated, defendant's lack of accountability and insight into his crimes, and defendant's not receiving any sex offender treatment while incarcerated. The prosecution also argued that the evaluation tools did not support granting parole because the QMHP noted concerns in several areas of evaluation. The prosecution pointed out that defendant had not received any type of treatment for the type of crimes he committed. The prosecution requested that the court reverse the Parole Board's decision. The Parole Board argued that defendant's scores on the Static-99R and Stable-2007 supported granting defendant parole. It also argued that even though defendant had received misconduct tickets while incarcerated, that did not mean that granting him parole was an abuse of discretion. It pointed out that defendant had not had any misconducts since 2010. Defendant argued for affirming the Parole Board's decision on the ground that it did not abuse its discretion when it granted him parole and asserted that he was not eligible to participate in sex offender therapy while incarcerated because of his life sentence. He pointed to his assessment as a low risk to reoffend and argued that the prosecution wanted the court to substitute its judgment for that of the Parole Board. The circuit court held a hearing and took the matter under advisement. The court later issued a detailed written opinion and order reversing the Parole Board's grant of parole on the ground that it abused its discretion because there did not exist reasonable assurances that defendant would not be a menace or threat to society. The court acknowledged that defendant did not bear fault for not receiving sex offender counseling but observed that he had not participated in any form of intensive therapy during his incarceration. The court noted that defendant rated as a low risk in the Static-99R and the Stable-2007 tests, but the court considered those evaluations inadequate when considering the seriousness of defendant's crimes and the record which revealed that he never fully accepted responsibility for his crimes against his biological children. The court noted inaccuracies in the Static-99 scoring which if corrected would have placed defendant in the average risk for recidivism, not the low risk level. The court mentioned that the parole guidelines scoresheet also seemed inaccurate because defendant had never earned his GED, never participated in intensive therapy or sex offender treatment as had been recommended, and noted that, but for defendant's age and years of misconduct-free behavior, defendant would have been in the average-probability of parole range.

The court considered significant that defendant demonstrated no real insight into his crimes. The court also noted that the record established that defendant had no viable plan for parole and that defendant's plan for employment—to work in the fast food industry—was untenable because he could not be around minors and fast food restaurants can hire children as young as 16 years old. The court questioned whether defendant would attend sex offender therapy after his release. The court ruled that the Parole Board abused its discretion by granting parole to defendant. Defendant now appeals.

## II. STANDARD OF REVIEW

We review de novo a circuit court's decision to reverse the Parole Board's grant of parole. See *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018). The Parole Board's decision is entitled to deference. *In re Wilkins*, 506 Mich 937; 949 NW2d 458 (2020). The circuit court, however, may reverse the Parole Board's decision to grant a prisoner parole if the Parole Board's decision was a clear abuse of discretion or violated a constitution, statute, rule, or regulation. *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Id.*; see also *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Under MCL 791.234(11), the prosecution or the victim of an offense may appeal in the circuit court the Parole Board's grant of parole to a prisoner. *Morales v Mich Parole Bd*, 260 Mich App 29, 35; 676 NW2d 221 (2003). A reviewing court may not substitute its judgment for that of the Parole Board. *Id.* at 48; *Elias*, 294 Mich App at 538-539.

## III. ANALYSIS

Defendant argues that the circuit court erred by ruling that the Parole Board clearly abused its discretion and by reversing the Parole Board's decision to grant him parole. We disagree.

A prisoner has no "constitutional or inherent right to be conditionally released from a sentence that is validly imposed." *People v Grant*, 329 Mich App 626, 637; 944 NW 2d 172 (2019) citing *Morales*, 260 Mich App at 39. "A prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MCL 791.233(1)(a). The Parole Board has discretionary authority to determine a prisoner's eligibility for parole, but its discretion is not unlimited because its determination of the appropriateness of parole must accord with statutorily mandated guidelines and comprehensive regulatory parole guidelines. *Elias*, 294 Mich App at 512, 514-515, 521.

The Parole Board must "consider[ ] all relevant facts and circumstances," Mich Admin Code, R 791.7715(1), "in determining whether parole is in the best interests of society and public safety," Mich Admin Code, R 791.7715(2). The Parole Board should consider the prisoner's sentencing offense and "also look to the prisoner's rehabilitation and evolution throughout his or her incarceration." *Elias*, 294 Mich App at 544. "Moreover, when a prisoner has a history of 'predatory or assaultive sexual offenses,' the prisoner must undergo a 'psychological or psychiatric evaluation before the release decision is made . . . .' " *In re Parole of Haeger*, 294 Mich App 549, 553; 813 NW2d 313 (2011), quoting Mich Admin Code, R 791.7715(5). Further, under MCL 791.233(1)(e), a "prisoner must not be released on parole until the parole board has satisfactory evidence that arrangements have been made for such honorable and useful employment as the prisoner is capable of performing, . . . ."

MCL 791.233e requires the Michigan Department of Corrections to develop parole guidelines consistent with MCL 791.233(1)(a) to govern the Parole Board's exercise of discretion and assist it "in making objective, evidence-based release decisions that enhance public safety." Under the parole guidelines, the Parole Board must determine "whether parole is in the best interests of society and public safety considering the prisoner's past and current criminal behavior,

institutional adjustment, readiness for release, personal history and growth, and physical and mental health." *Haeger*, 294 Mich App at 553 (quotation marks, citation, and alterations omitted). The parole guidelines score must be based on:

> the prisoner's time served as well as the aggravating and mitigating circumstances of the sentencing offense, the prisoner's prior criminal record, the number of major misconducts committed by the prisoner within the preceding one- and five-year periods, the prisoner's score on risk screening scales, the prisoner's age, the prisoner's performance in recommended institutional programs, and the prisoner's mental health status. [*Id.* at 554 (quotation marks, alteration, and citation omitted).]

Under Mich Admin Code, R 791.7715(2), the facts and circumstances that the Parole Board considers include among other things: the prisoner's completion of recommended programs, (b)(iii); the prisoner's readiness for release as evidenced by the development of a suitable and realistic parole plan, (c)(iii); the prisoner's demonstrated willingness to accept responsibility for past behavior, (d)(i); and, the prisoner's family and community ties, (d)(iii). Further, under Mich Admin Code, R 791.7716(3)(a), the parole guidelines factors for scoring, in relevant part include:

> (a) The nature of the offense(s) for which the prisoner is incarcerated at the time of parole consideration, as reflected by all of the following aggravating and mitigating circumstances:

> * * *

> (ii) Physical or psychological injury to a victim.

> * * *

> (iv) Excessive violence or cruelty to a victim beyond that necessary to commit the offense.

> (v) Sexual offense or sexually assaultive behavior.

> (vii) Multiple victims.

> (viii) Unusually vulnerable victim, as reflected by age, impairment, or physical disproportionality.

> * * *

> (b) The prisoner's prior criminal record, as reflected by all of the following:

> (i) Assaultive misdemeanor convictions that occurred after the prisoner's seventeenth birthday.

> (ii) The number of jail and prison sentences imposed.

> (iii) The number of felony convictions.

* * *

(ix)  The number of commitments as a juvenile for acts that would have been crimes if committed by an adult.

* * *

(f)  The prisoner's performance in institution programs and community programs during the period between the date of initial confinement on the sentence for which parole is available and parole eligibility, including, but not limited to, participation in work, school, and therapeutic programs.

A prisoner being evaluated under the parole guidelines will be determined to have either a high, average, or low probability of parole. *In re Parole of Johnson*, 219 Mich App 595, 599; 556 NW2d 899 (1996).  If a prisoner scores +3 or greater, that individual is placed in the high-probability category. *Elias*, 294 Mich App at 518.  If a prisoner scores -13 or less, the prisoner is placed in the low-probability category. *Id*.  A score between +3 and -13 places an individual in the average-probability category. *Id*.  Under MCL 791.233e(6):

The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines.  A departure under this subsection shall be for substantial and compelling reasons stated in writing.  The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.[4]

The party challenging the Parole Board's decision has the burden of demonstrating that the board's decision was a clear abuse of discretion.  *Elias*, 294 Mich App at 538; MCR 7.118(H)(3)(b).  Whether the board abused its discretion must be determined "in light of the record and of the statutory requirements that limit the board's discretion." *In re Parole of Johnson*, 219 Mich App at 598 (quotation marks and citation omitted).

In this case, the record indicates that the Parole Board granted defendant parole based on its parole guidelines score calculation of +3, the QMHP, and combined Static-99R and Stable-2007 evaluations, and on appeal to the circuit court, the Parole Board relied upon those evaluation methods to support its decision.  The Newaygo County Prosecutor argued for reversal of the parole decision essentially on the grounds that the record did not establish that defendant would not

---

[4] This version of MCL 791.233e(6) was in effect before the Legislature's December 12, 2018 amendment.  Pursuant to MCL 791.233e(14), the amended version of MCL 791.233e(6) does not apply to defendant.  MCL 791.233e(7) now lists reasons that can be considered "substantial and compelling objective reasons" to depart from the parole guidelines for a prisoner with a high probability of parole.  However, pursuant to MCL 791.233e(14), Subsection (7) does not apply to a prisoner serving a life sentence.  Mich Admin R 791.7716(5) is identical with the first two sentences of this version of MCL 791.233e(6).

become a menace to society and the public safety, and defendant lacked an adequate plan establishing his readiness for release. The circuit court examined the entire record including defendant's PSIR, the files pertaining to his previous attempts to obtain parole, the file pertaining to defendant's current request for parole, and the public hearing transcript. The court identified and articulated in its written opinion numerous substantial and compelling reasons why it concluded that the Parole Board abused its discretion by granting parole to defendant.

Examination of the record in this case supports the circuit court's decision. The record indicates that defendant had been denied parole several times because he minimized his criminal conduct. In his early attempts at obtaining parole, the record indicates that defendant denied committing his crimes. Years later when he sought parole, defendant admitted that he sexually abused AS by having sexual intercourse with her, but he continued to deny that he sexually abused KS. Later during another effort to obtain parole, defendant admitted that he sexually abused KS and AS, but continued to deny abusing HS. Then, in more recent attempts to obtain parole, defendant began admitting that he sexually abused all three of his biological children. Nevertheless, defendant could never articulate why.

During the public hearing in this attempt to obtain parole, at which defendant had every opportunity to demonstrate his readiness to reenter society, defendant failed to do so. Although defendant's position has evolved to the point that he admits sexually abusing all of his children, his testimony at the public hearing reveals that he still lacks insight and understanding and denies certain aspects of his criminal conduct. Although defendant admitted to some aspects of the abuse after being repeatedly prodded to fully explain his actions, he remains committed to denying the scope of his crimes against his children and continues to minimize his criminal conduct. Moreover, the public hearing reveals that defendant failed to readily admit the number of times he sexually abused KS and AS, denied ejaculating despite record evidence to the contrary, and denied taking responsibility for giving AS a sexually transmitted disease. Further, although the record indicates that defendant claims to have experienced guilt, sorrow, and shame just after he sexually abused KS and AS, he admits that he continued to sexually abuse them with the hope and expectation that he would experience the sexual pleasure he sought. Defendant was presented multiple opportunities to demonstrate some insight into his criminal behavior but remained completely lacking in understanding and insight.[5] Moreover, nothing in the record indicates that defendant ever expressed remorse to his victims or apologized to any of them for his criminal conduct.

Defendant's testimony at the public hearing indicated that he participated in the Hope and Recovery program but the record indicates that he did so nearly twenty years ago. Since then, defendant has not engaged in any type of program that even tangentially might assist him to gain insight and fully accept responsibility for his crimes. Defendant satisfactorily explained why he did not engage in the sex offender program as unavailable to him as a lifer, but he offered no explanation for not seeking out and engaging in other programs. The record does not demonstrate that defendant has experienced rehabilitation and fully evolved during his incarceration to

---

[5] Defendant's testimony at the public hearing also reveals that, although he admits committing his prior criminal offenses, he also minimizes the seriousness of those offenses.

understand and take responsibility for his crimes against his children. Defendant has not engaged in any therapy nor sought out and engaged in other programs that may have enabled him to gain insight and understanding into his criminal behavior.[6]

Defendant's testimony also reveals that he lacked a suitable plan for after his release. He had neither housing nor employment available and the record indicates that community housing would be unlikely in Newaygo County, a county the Parole Board described in its criminogenic needs summary as socially disadvantaged with high unemployment. Further, defendant testified that he anticipated getting minimum wage jobs, and when pressed he stated that he would apply to be a dishwasher. Defendant, however, did not specify at what type of facility or enterprise he expected to obtain such employment. To his credit, the record indicates that defendant has saved $1,000 while incarcerated. Defendant, however, did not articulate how his savings figured into his parole plan.

The most recent QMHP reveals that defendant continues to minimize his sexual abuse of his children and he openly acknowledges that he minimizes the specific details of the incidents including the length of time he continued the abuse and the specific acts he perpetrated against each victim. This QMHP indicates nine areas of concern, many of which relate to his readiness for release. The social worker who interviewed defendant and prepared the QMHP indicated concerns that defendant has no contacts with anyone and lacks a support system outside of prison. Of graver concern, the QMHP indicates that in the area of deviant sexual interests, the social worker found significant concerns exist because defendant responded in a contradictory manner. He denied ever identifying children as sexual objects yet reported that he committed his crimes for his own sexual pleasure. He denied details of the acts he performed on the children contrary to record evidence indicating that he engaged in anal and vaginal intercourse and oral sex with them.

The record indicates that the circuit court considered defendant's offenses and the lifelong mental and physical impact his criminal behavior had on the children. The court appropriately questioned whether defendant accepted responsibility of his criminal behavior and had any insight or understanding of what and why he sexually abused all of his vulnerable, extremely young biological children. Defendant's parole hearing testimony and his statements to the QMHP interviewer establish unequivocally that defendant failed to fully admit the extent of his sexual abuse and utterly lacked personal insight and understanding. The record does not establish that defendant has overcome his pedophilic and predatory nature. Defendant failed to demonstrate willingness to accept responsibility for past criminal behavior.

After thoroughly reviewing defendant's files, the circuit court questioned the Parole Board's reliance on the Static-99R and Stable-2007 evaluations because discrepancies were readily apparent between the scoring and the record evidence. Although the Parole Board is deemed to have thoroughly examined the record and is generally entitled to deference, circuit courts are not required to turn a blind eye to obvious discrepancies. In this case, the circuit court did not substitute its judgment for that of the Parole Board but determined an error committed during the

---

[6] The record indicates that defendant engaged in the GED program but he could not complete it despite his efforts. He also has been involved in the music program and the horticulture program.

process of evaluating defendant's level of risk which undermined the weight that the statistical analysis should be given. That, coupled with defendant's gross failure to demonstrate willingness to accept responsibility for and insight into his past criminal behavior supported the circuit court's conclusion that defendant failed to establish his readiness for release and that he will not become a menace to society or to the public safety.

The circuit court also appropriately concluded that defendant had no viable plan for parole because he lacked a support system outside prison, lacked housing, lacked marketable skills, and had no specific plans for employment. The court did not err by concluding that defendant could not demonstrate readiness for release because the record establishes that he lacked specific plans and skills to enable him to integrate back into society. The record supports the circuit court's conclusion that, by granting defendant parole under the circumstances, the Parole Board abused its discretion.

Defendant claims that the circuit court erred by concluding that defendant should complete sex offender training before his release. The record indicates that one of the conditions of parole required defendant to "complete sex offender treatment or other treatment when referred by the field agent." The circuit court correctly observed that the condition meant that defendant might not be required to attend sex offender treatment and the matter would be left to the discretion of his parole officer. The court questioned whether a known predatory pedophile should be released into the public having had no treatment, and with only a discretionary condition after release. Under the circumstances of this case, as previously explained in this opinion, the circuit court could conclude that reasonable assurances do not exist that defendant would not become a menace to society. The record establishes that defendant has not attended and completed any sort of program or therapy, and his public hearing testimony establishes that he has neither been rehabilitated during his incarceration nor evolved to the point of speaking candidly about his crimes and accepting full responsibility for them, and he remains lacking in insight about his criminal conduct. The circuit court did not err by stating that significant concerns exist where sexual offender treatment will be left to the discretion of a parole officer. That is not indicative that the Parole Board properly exercised its discretion. The circuit court's conclusion that the Parole Board abused its discretion by not requiring completion of sex offender counseling or mandatory residential treatment before release into the public was based on the substantial and compelling reasons it articulated in its lengthy opinion which established defendant's inability to demonstrate his readiness for release. The record indicates that the circuit court appropriately concluded that reasonable assurance, after consideration of all of the facts and circumstances, did not exist that defendant will not become a menace to society or to the public safety as required

under MCL 791.233(1)(a). The Parole Board clearly abused its discretion by granting defendant parole. The circuit court, therefore, did not err by reversing the Parole Board's decision.

Affirmed.[7]

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[7] Defendant raises additional issues on appeal regarding procedural due process, but because we conclude that the trial court correctly determined that the Parole Board abused its discretion by granting defendant parole and properly reversed that ruling, and the parole system does not create a constitutionally protected interest because a prisoner enjoys no constitutional or inherent right to be conditionally released from a validly imposed sentence, *Grant*, 329 Mich App at 637, it is unnecessary for this Court to address those issues.